[Civ. No. 250. Fifth Dist. Dec. 27, 1963.]

GLADYS B. DeVAULT, Plaintiff and Appellant, v. JOSEPH A. LOGAN et al., Defendants and Respondents.

Richard M. Kaplan for Plaintiff and Appellant.

Stammer, McKnight & Barnum and James K. Barnum for Defendants and Respondents.

BROWN (R.M.), J.—This appeal originated in a medical malpractice action commenced by plaintiff- appellant against Doctors Joseph A. Logan, Curtis Lee Price and Frank J. Puerta, a copartnership practicing medicine, defendants-respondents. Dr. Puerta is the actor; Doctors Logan and Price are joined on a theory of partnership liability. The word "defendant" as used herein shall refer to Dr. Puerta. The issues raised by the affirmative defense of the bar of the statute of limitations were tried by a jury prior to and separate from the issues on the merits and the verdict was for plaintiff. Defendants' motion for an order for judgment notwithstanding the verdict was granted. Plaintiff appeals from the minute order granting the motion and from the judgment entered pursuant thereto in favor of the defendants.

The order granting judgment notwithstanding the verdict is not a final judgment and not an appealable order. The purported appeal therefrom must be dismissed. (*Jordan* v. *Talbot,* 55 Cal.2d 597, 602 [12 Cal.Rptr. 488, 361 P.2d 20].)

Viewing the evidence in the light most favorable to the plaintiff, and disregarding conflicts and contradictions, as the court must on an appeal from a judgment notwithstanding the verdict, the evidence shows the following facts:

On February 25, 1960, at about 7 p.m. the plaintiff, a 71-year-old woman, fell on a cement step outside her son's home, injuring her left hip and upper thigh. She was carried into the house, where she sat on a chair until Dr. Puerta arrived some 45 minutes later. She was assisted by her son and Dr. Puerta in walking a distance of approximately 38 feet to the bedroom where Dr. Puerta examined her. He advised her that it was his opinion she had no fractured bones but did have a bad bruise. He told her to come to his office the next morning for X-rays, and advised her to use crutches if it became necessary for her to go to the bathroom. He said nothing about going to a hospital that night or about obtaining immediate X-rays. The reassured plaintiff fell asleep but awakened about 2:30 a.m. February 26th, and, using crutches, went to the bathroom. As she seated herself on the toilet seat, she heard a loud popping sound from the area of her left hip and immediately experienced excruciating pain which caused her to become nauseated and to faint. Later that same morning she was transported by ambulance to St. Agnes Hospital where an X-ray was taken and she was placed in traction. She was told she had a fractured hip. That same night Dr. Clarmont P. Doane, an orthopedic spe-

cialist, performed surgery and removed the head of the femur and inserted a metal prosthesis. The plaintiff was informed of this surgery while in the hospital. Although she saw both Dr. Logan and Dr. Puerta in the hospital, the subject of her initial diagnosis and treatment by Dr. Puerta was never discussed.

Plaintiff was discharged from St. Agnes Hospital on March 8, 1960. She never saw or talked with the defendants again.

She never recovered after surgery and her hip became increasingly painful. A staphylococcus infection developed in the operative wound which persisted for months. She was subsequently seen and treated by Doctor Molyneaux, Doctor Beare and Doctor Cleary in the San Francisco Bay area and by Doctor Doane and Doctor Gray in Fresno. She entered hospitals upon three occasions where she underwent diagnostic studies and tests for anemia and received blood transfusions. All of this occurred prior to June 15, 1960. She never discussed with any of these doctors the subject of her initial diagnosis and treatment by Dr. Puerta.

On September 9, 1960, at the Peninsula Hospital in Burlingame, the metal prosthetic femoral head was removed by surgical procedure performed by Dr. Cleary, an orthopedic surgeon.

In March 1961 the plaintiff's daughter consulted an unidentified attorney in San Francisco on another matter and was told by him that the plaintiff's medical case "probably hadn't been handled properly." The remark was transmitted to plaintiff. She then consulted her present attorney in June 1961 and this action was filed July 26, 1961, 17 months after the injury.

It was the opinion of the medical witnesses that the plaintiff's hip was fractured at the time of the fall and that a displacement of the fracture occurred at the time she seated herself in the bathroom.

On appeal, plaintiff presents two primary issues: (1) that the motion for a directed verdict, which at the time of trial was a prerequisite to a motion for a judgment notwithstanding the verdict,[1] was not made timely; and (2) that the court erred in granting the motion.

---

[1]This case arose before the effective date of the 1963 amendment to Code of Civil Procedure section 629 which eliminated the making of a motion for directed verdict as a prerequisite to a motion for judgment *non obstante veredicto.*

The motion for a directed verdict was made, by leave of court, after the close of evidence and arguments of counsel to the jury but prior to the court's charge to the jury. Plaintiff contends that such motion must be made at the close of evidence in order ''to give the party against whom the motion is directed an opportunity to introduce whatever further and additional evidence he may have at hand to overcome the grounds of the motion'' (*Estate of Easton,* 118 Cal.App. 659, 662 [5 P.2d 635]). The contention is answered by the decisional law of this state and by the record. It has been held that while the motion for directed verdict should be made at the completion of the taking of evidence, it is within the discretion of the court to permit it to be made at any time before the case is submitted to the jury. (*Gibson* v. *Southern Pacific Co.,* 137 Cal.App.2d 337 [290 P.2d 347]; *Quiring* v. *Zamboni,* 148 Cal.App.2d 890 [307 P.2d 650].)

Plaintiff made no request to reargue or reopen when the motion was made and on appeal shows no prejudice. The record discloses that, at the time the motion was made and before the court ruled thereon, the trial judge specifically invited plaintiff's counsel to object to the motion being made at that time, if he so desired, and counsel replied, ''Oh, I assume that the court has control of the order of testimony, and the order of motions.'' Having then acquiesced to the belated motion, it is too late for plaintiff to now object.

In seeking reversal, plaintiff urges that the court erred in concluding as a matter of law that plaintiff's alleged cause of action was barred by the statute of limitations.

The general rule is that an action brought by a patient against a doctor for damages for injuries sustained by the patient arising out of negligent treatment on the part of the physician is an action in tort and not upon a contract. The statute of limitations of one year embodied in the Code of Civil Procedure section 340, subdivision 3, is applicable to such action. (*Stafford* v. *Shultz,* 42 Cal.2d 767, 775 [270 P.2d 1]; *Huysman* v. *Kirsch,* 6 Cal.2d 302, 306 [57 P.2d 908]; *Garlock* v. *Cole,* 199 Cal.App.2d 11, 15 [18 Cal.Rptr. 393]; *Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d 57, 63-64 [9 Cal.Rptr. 555].) Exceptions which relax this general rule have been recognized and established. Thus, it has been held that the statute does not commence to run while the patient and physician relationship continues (*Huysman* v. *Kirsch, supra; Myers* v. *Stevenson,* 125 Cal.App.2d 399, 401 [270 P.2d 885]; *Ehlen* v. *Burrows,* 51 Cal.App.2d 141, 144 [124

P.2d 82]); or until the plaintiff discovers the injury, or through the use of reasonable diligence should have discovered it (*Stafford* v. *Shultz, supra; Hundley* v. *St. Francis Hospital,* 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R. 2d 360]; *Hemingway* v. *Waxler,* 128 Cal.App.2d 68, 70-71 [274 P.2d 699]) whether such actual or constructive discovery occurs prior to or after termination of the doctor-patient relationship (*Petrucci* v. *Heidenreich,* 43 Cal.App.2d 561, 562 [111 P.2d 421]); or if there is an act or omission on the part of the doctor which would toll or interrupt the running of the statute or estop the doctor from asserting that the action is barred (*Calvin* v. *Thayer,* 150 Cal.App.2d 610, 615 [310 P.2d 59]), such as fraudulent concealment of the facts giving rise to the cause of action (*Stafford* v. *Shultz, supra,* 42 Cal.2d at p. 779; *Garlock* v. *Cole, supra,* 199 Cal.App.2d 11).

In the case under consideration plaintiff's arguments relating to the existence of a fiduciary relationship and her reliance on Dr. Puerta's skill and judgment must fail for the relationship of doctor and patient terminated on March 8, 1960, more than one year prior to commencement of this action. Thereafter she was under the care of other physicians and surgeons. Plaintiff adduced no evidence tending to establish the doctrine of fraudulent concealment or that the delay in commencing her action was induced by any conduct on the part of the doctor. The only arguments, therefore, which merit discussion relate to her claim that she did not discover, and could not have discovered by the use of reasonable diligence, the claimed negligence of Dr. Puerta until March of 1961 when an attorney advised her daughter that her case "probably hadn't been handled properly" and that statement was transmitted to plaintiff.

Similar contentions were made and rejected in two cases which involved factual situations strikingly similar to the facts in this case. In *Hemingway* v. *Waxler, supra,* 128 Cal. App.2d 68, judgment for the defendant after trial on the special defense of the bar of the statute of limitations was affirmed. The plaintiff suffered a broken leg in an accident. The defendant doctor examined plaintiff and X-rays which had been taken and told plaintiff that his leg was not fractured but only bruised and that some ligaments were pulled. The plaintiff did not see the doctor again. He had difficulty walking and consulted other doctors who took X-rays, applied a cast and told him that the leg was broken with some

subsequent and additional bone splintering. His complaint was filed some two years after the accident. In an attempt to avoid the bar of the statute he testified that he knew the defendant's diagnosis was wrong, but that it was not until after he went to work and discovered that he would probably have trouble with his leg for the rest of his life that he first realized that he might have suffered further injury because of the defendant's incorrect diagnosis. At page 71, the court said: ''The evidence clearly shows that the plaintiff in January, 1951, and more than a year prior to suit, discovered that Dr. Waxler's diagnosis of torn ligaments was wrong, and that he had a broken bone instead, which had newly and additionally splintered. This knowledge imposed upon him the duty of ascertaining what the effects of this erroneous diagnosis, and the treatment given by Dr. Waxler, were. Even a layman knows that placing weight on a broken bone is not too beneficial. We cannot say that the trial court was not justified under the evidence in disregarding plaintiff's statement that while he knew of the incorrect diagnosis and the splintering of the bone he did not know of the incorrect treatment. In any event, and this finding alone would support the judgment, there can be little question that plaintiff could and should, when he learned of Dr. Waxler's mistaken diagnosis, have inquired as to the consequences of that error. The exercise of reasonable diligence required such inquiry. 'Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.' (Civ. Code, § 19.)''

In *Tell* v. *Taylor,* 191 Cal.App.2d 266 [12 Cal.Rptr. 648], summary judgment for the defendant in a malpractice case was affirmed. In the last cited case the plaintiff had fallen on June 22, 1957, injuring her hip. The defendant, an osteopathic physician, administered manipulative treatment and attempted to determine whether the hip bone was fractured for a period of three weeks. X-rays taken on July 15, 1957, revealed a fracture. Plaintiff was informed of the fracture and advised to consult an orthopedic specialist. The defendant never saw her again. Surgery was performed and the plaintiff was advised that it would take a long time before her permanent condition could be determined. About March 15, 1958, she was informed that the surgical pin had slipped, the bone had not healed and the injury was permanent. Her

complaint was filed on January 22, 1959, about 19 months after the initial injury. She contended that she did not and could not have known of the defendant's negligence until March 15, 1958, when she had been advised that the surgical repair had failed and her injury would be permanent. It was held that the plaintiff's contention of belated discovery was without merit; that the facts clearly showed that she had full knowledge of the doctor's negligence after the X-rays were taken; that she knew, after the surgery, that her future condition was in doubt and that the defendant's diagnosis and treatment were in error; and that therefore any cause of action based upon the negligence of the doctor was barred by the statute of limitations. (See also *Winkler* v. *Southern Cal. etc. Medical Group,* 141 Cal.App.2d 738 [297 P.2d 728].)

In our case plaintiff testified that she knew, the day after the fall, that she had sustained a bone fracture, that X-rays had not been taken until the morning after the fall and that Dr. Puerta's diagnosis that she had been bruised but did not have a broken bone was erroneous. Nevertheless, she would build a theory of discovery of facts giving rise to a cause of action predicated on the offhand remark of the attorney. We cannot agree. The most this offhand statement could do was advise plaintiff, through a third person, that she may have had a legal right to sue; and this without the attorney's having analyzed that possible cause of action. It added nothing to her prior full knowledge of the character and cause of her injury and of the only acts of alleged negligence attributable to Dr. Puerta which gave rise to her cause of action against him and his partners.

It is fundamental that a litigant who relies on facts in order to avoid the bar of the statute of limitations bears the burden of proving such facts (*Larsson* v. *Cedars of Lebanon Hospital,* 97 Cal.App.2d 704, 706 [218 P.2d 604]; *Shapiro* v. *Equitable Life Assur. Soc.,* 76 Cal.App.2d 75, 95 [172 P.2d 725]; 54 C.J.S., Limitations of Actions, § 386, p. 526).

No proof in avoidance of the bar of limitations was shown by plaintiff and hence the trial court properly determined that plaintiff's cause of action was a stale claim when suit was filed.

Plaintiff lastly contends that questions of when plaintiff made discovery and whether she acted with reasonable diligence under the circumstances are fact questions for the jury and hence the court erred in overturning the jury's verdict.

It is true that the question of when there has been a

belated discovery in malpractice cases has been said to be essentially a question of fact (*Hemingway* v. *Waxler, supra,* 128 Cal.App.2d at p. 70; *Costa* v. *Regents of University of California,* 116 Cal.App.2d 445, 455 [254 P.2d 85]), and this is so because the answer depends upon the circumstances of the case under consideration. But the principle is not one of unbending rigor, for it is elementary that when reasonable minds can draw but one conclusion from the evidence, the question is one of law. In many cases, both old and new, the determination has been made as a matter of law. (*Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d 57; *Hurlimann* v. *Bank of America,* 141 Cal.App.2d 801 [297 P.2d 682]; *Ehlen* v. *Burrows, supra,* 51 Cal.App.2d 141; *Bathke* v. *Rahn,* 46 Cal.App.2d 694 [116 P.2d 640] (all judgments of dismissal after demurrers sustained); *Tell* v. *Taylor, supra,* 191 Cal.App.2d 266 (summary judgment for defendant).)

█ Further, the rules governing disposition of a motion for judgment notwithstanding the verdict, so well laid out in *Reynolds* v. *Willson,* 51 Cal.2d 94, 99 [331 P.2d 48], support the authority of the trial court to grant the judgment in this case. █ It is there said that a motion for judgment notwithstanding the verdict should be granted only if a motion for a directed verdict should have been granted; that rules governing the granting of a nonsuit govern the granting of a directed verdict and that a nonsuit should be granted only when ". . . disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." █ We agree with the trial judge that plaintiff failed to adduce any evidence of sufficient substantiality to support the finding of belated discovery which is implicit in the verdict.

The purported appeal from the order granting judgment notwithstanding the verdict is dismissed. The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.