[Civ. No. 29133.   Second Dist., Div. Two.   Apr. 27, 1966.]

RALPH JAMES BEARY, Plaintiff and Appellant, v.
CHARLES R. SMART, Defendant and Respondent.

James H. Davis, Gordon R. Lindeen and Fitzwater & Davis for Plaintiff and Appellant.

DeForrest Home for Defendant and Respondent.

HERNDON, J. — Plaintiff appeals from the judgment entered following the return of a defense verdict by the jury empaneled to determine the issues of fact in this malpractice action.

It is undisputed that appellant suffered a paralysis of his right arm as the result of a tourniquet placed thereon by respondent doctor during the performance of an excision biopsy of a tumor. Contrary to appellant's assertions, the record is replete with evidence that such unfortunate results from the use of tourniquets occur, not only in instances where a tourniquet has been applied too tightly or for too long a time, but also where the patient has an anatomical structure with an indiscernible abnormality or idiosyncracy. In addition, evidence was introduced that there are individual variations in susceptibility to nerve damage and that such damage can occur in certain patients even though all due care is exercised in the application of tourniquets.

Respondent introduced evidence through his own testimony and that of other experts to establish that a tourniquet of the type here used was the only truly effective method for obtaining the bloodless field so necessary to the successful performance of the instant operation and that he had used all due care in its application. Appellant introduced the testimony of other doctors that at most created only a conflict in the evidence which, it must be inferred, the jury chose to resolve adversely to appellant. The following instructions, *inter alia*, were requested by appellant and were given to the jury in the sequence as indicated:

(214-W) "You must decide the following questions concerning the injury involved in this case. Is it the kind of injury which ordinarily does not occur in the absence of negligence? Whether the injury is one which ordinarily does not occur in the absence of negligence is to be determined from the evidence presented in this trial by physicians and surgeons called as expert witnesses. Was the injury caused while the plaintiff was exclusively under the care or control of the defendant? Was the injury due to any voluntary action or contribution on the part of the plaintiff? The mere fact that a particular injury does not ordinarily result from an operation does not, in and

of itself, prove that it was caused by negligence. If, and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence, was caused while the plaintiff was exclusively under the care or control of defendant, and was not due to any voluntary action or contribution by the plaintiff, you are instructed as follows:

(206) ''From the happening of the injury involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference. When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of defendant's negligence. If the evidence tending to prove that the accident was caused by a failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue. In order to meet or balance the inference of negligence, the defendant must present evidence to show either (1) a satisfactory explanation of the injury, that is, a definite cause for the injury, in which there is no negligence on the part of the defendant, or (2) such care on the defendant's part as leads to the conclusion that the injury did not happen because of want of care by him, but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue.''

The following additional instructions were given at respondent's request:

(E) ''Notwithstanding any other instructions given to you in this case, the burden of proof of both malpractice and proximate cause remains at all times upon the plaintiff. This burden never shifts to defendant, and if, after a consideration of all the evidence, including any inferences arising therefrom, you will find that the plaintiff has failed to maintain his burden of proof either upon the issue of malpractice or upon the issue of proximate cause, then plaintiff would not be entitled to recover.''

(D) ''When there is more than one equally probable cause of an injury for at least one of which the defendant would not be liable, then the burden is on plaintiff to establish by a preponderance of the evidence that the actual cause was one

for which the defendant would be liable. If you should find that the evidence is equally balanced as between different probable causes so that you cannot say that the evidence preponderates in favor of the cause for which the defendant would be responsible, then plaintiff would not have maintained his burden of proof in the case."

(J) "You are instructed that once a patient leaves the operating room and comes under the care of the hospital nurses, the doctor is not responsible for the actions of such nurses in performing the ordinary nursing functions. If a hospital nurse in the recovery room, or in the patient's private room, does some act not ordered by the physician which results in injury to the patient, the physician would not be liable therefor. Hospital nurses are the employees of the hospital and not of the doctor, and the doctor is not responsible for their acts in performing ordinary nursing duties."

█ Appellant cites the giving of Instructions D, E and J as error requiring reversal herein. We are unable to agree with this contention. Appellant's objections to Instruction D are predicated upon his basic assumption that there is no evidence sufficient to support a finding that any cause, other than a negligent application of the tourniquet, could have produced the injury in question. As an appellate court, of course, we cannot proceed upon any such assumption because the record discloses substantial and credible evidence that injuries are occasionally suffered by certain patients even though all due care has been used in the application of the tourniquet. In the presence of such evidence, it became a purely factual issue to be determined by the trier of the fact whether any of such causes other than negligence were "more probable," "less probable" or "equally probable."

The instruction constitutes an accurate statement of the law to be applied by the trier of the fact after it has determined the question of probabilities. Contrary to appellant's argument, the word "actual" appearing in the instruction does not conflict with the basic doctrine of res ipsa loquitur. It could not reasonably be misconstrued by the jury as a requirement that appellant had the burden of establishing the *specific* cause of the injury. In the context here used, it seems clear that the word "actual" was meant, and the jury would understand that it was meant, only to require that the cause, or causes, *including* any that might be inferred upon application of the doctrine of res ipsa loquitur, be found related to the injury as the operative or effective cause in the case on trial.

■ Appellant's contentions regarding Instruction E are equally unmeritorious. While the necessity for giving this instruction may be questioned, since the essence thereof is inherently a part of the preceding Instruction No. 206, it is not a misstatement of the law (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 437 [260 P.2d 63]), and its use in this instance cannot reasonably be regarded as prejudicially erroneous.

■ Appellant's brief argument relating to Instruction J does not challenge its correctness as a statement of the law, but rather urges that it is inapplicable to the facts of the instant case. However, appellant's wife testified that after appellant was returned to his room following the surgery, she observed a nurse removing a tourniquet that looked like a round tube, beige in color, from his shoulder area. It is clear that if such testimony were believed, then it described an entirely different tourniquet from that which had been used during the surgery. Therefore, if a nurse negligently had applied a new tourniquet in order to facilitate the injection of a needle for the purpose of intravenous feeding, such negligence could not be imputed to respondent.

■ Appellant's final assignment of error is based upon the striking of the ''explanation'' to an answer given by one of appellant's experts during his recross-examination. The following questions and answers are reported: ''Q. Well, Doctor, in the use of a tourniquet for surgical procedures, one of the calculated risks is nerve damage; is it not? A. Yes, one of the things that we take measures to avoid is nerve damage. Q. Just as you take measures to avoid cardiac arrests during anesthesia; is that right? A. Within the limits of our ability, yes. Q. But they happen despite the best of care and in the best of institutions, don't they? Answer that yes or no. A. I can't give a 'yes' or 'no' answer to that. . . .

''A. I would give an answer of 'yes' to that question, conditioned also by the explanation . . . that that answer is really brought from me to compare apples and oranges because these are not comparable situations in the risks involved and the measures taken to avoid it. Cardiac arrest at times is truly unavoidable. This is a truth, we know that. Tourniquet paralysis, if it is necessary to save a man from hemorrhaging to death, is certainly justified and reasonable. But I don't think we should compare uncomparable things and blur distinctions.

''Mr. Home [respondent's counsel]: Your Honor, I move to strike all of the doctor's answer after the word 'yes' upon the

ground that it is not an explanation of the answer. He was not asked to compare anything. He was simply asked whether or not cardiac arrest doesn't happen in the best of institutions and under the best of care. The Court: Well, everything after the word 'yes' is stricken and the jury is instructed to disregard it.''

While it is true that the witness was not asked to compare tourniquet paralysis and cardiac arrests, he doubtless realized that respondent's two succeeding questions, which leaped from one such condition to the other, were designed to create the impression that some such comparison was being made, for otherwise the question relating to cardiac arrests was quite irrelevant and immaterial. Nevertheless, the trial court did not err in striking the answer and in requiring that appellant correct any misconception that might have resulted by further questioning on redirect examination. This appellant did, and, over respondent's objections, the doctor testified that he did not ''believe there is a true comparison between the one complication and the other within the framework of our discussion today.'' Such explanation removed any prejudice that might have occurred even if the initial ruling of the trial court were to be regarded as erroneous.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.