[Civ. No. 876. Fifth Dist. Aug. 30, 1968.]

REBA RAWLINGS, Plaintiff and Appellant, v. CHARLES P. HARRIS, Defendant and Respondent.

Walkup, Downing, Wallach & Sterns and William B. Boone for Plaintiff and Appellant.

Gallagher, Baker and Manock, John J. Gallagher and John E. Fitch for Defendant and Respondent.

CONLEY, P. J.—The appellant, Reba Rawlings, appeals from a judgment in favor of the defendant doctor, Charles P. Harris, in a malpractice suit. As the contemporaneous result of a panhysterectomy operation, the plaintiff became afflicted with a vesico-vaginal fistula; this fistula leaked urine from the bladder through the vagina of the plaintiff constantly day and night ''like a water faucet'' for a considerable period of time, causing the appellant to wear diapers and bath towels to soak up the liquid.

There are two main issues to be decided. The first one is tendered by the respondent, who calls attention to the fact that the verdict of the jury was general, that there were two

defenses urged by the doctor, one being that he was not guilty of any negligence and the second that the cause of action was barred by the statute of limitations, and that under the rule adopted by the Supreme Court of this state it must be legitimately assumed that the jury found in favor of the defendant and respondent on the statute of limitations defense. The second important issue, if the first above mentioned is not adopted, is whether the court committed reversible error in not instructing the jury that the plaintiff, under her theory, must have the benefit of the res ipsa loquitur doctrine and that the jury should have been so instructed.

With respect to the contention made by respondent that there was no error in connection with the special defense that the cause of action was barred by the statute of limitations, it appears without question in the evidence that the panhysterectomy was performed October 30, 1962, that from November of the same year until June 9, 1965, when the fistula was repaired by another doctor, the plaintiff suffered leakage of urine through the fistula and the vagina; the record also shows that the plaintiff consistently testified under oath that while she knew that the condition was unusual, particularly with respect to Dr. Harris, and that her condition was unfortunate and improper, she did not know or suspect that Dr. Harris was negligent, or could be charged with fault, until March of 1964. She sued within one year after that time and maintains that, under the law, the start of the action was timely.

It is contended by Dr. Harris' counsel that the jury had a right to find as a fact whether or not she should have acted by suit against the doctor within one year after the operation, and that the jury had the right to find that she was guilty of constructive negligence in failing to file her action within that time. The Supreme Court of the state has held that when there is a general verdict and a plaintiff has sued on two causes of action, the judgment in favor of a plaintiff must be affirmed if one of the causes of action is supported by ample evidence and there is no error in the record with respect to such cause of action even though there are errors with respect to the other cause of action. (*Gillespie* v. *Rawlings,* 49 Cal.2d 359 [317 P.2d 601]; *Tucker* v. *Landucci,* 57 Cal.2d 762 [22 Cal.Rptr. 10, 371 P.2d 754]; *Moss* v. *Coca Cola Bottling Co.,* 103 Cal.App.2d 380, 384 [229 P.2d 802]; *Estate of Hellier,* 169 Cal. 77, 83 [145 P. 1008]; *Shields* v. *Oxnard Harbor Dist.,* 46 Cal.App.2d 477, 491 [116 P.2d 121]; *Hume* v. *Fresno Irr. Dist.,* 21 Cal.App.2d 348, 356 [69 P.2d 483]; *King* v.

*Schumacher,* 32 Cal.App.2d 172, 179 [89 P.2d 466]; *Rather* v. *City & County of San Francisco,* 81 Cal.App.2d 625, 636 [184 P.2d 727]; *Posz* v. *Burchell,* 209 Cal.App.2d 324, 335 [25 Cal.Rptr. 896].) Objections to the underlying theory of these cases have been made previously but have been overruled by the Supreme Court. This court is bound by the holding of the Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937]). It is imperative, therefore, to apply the rule in question if it is supported by the evidence. However, a painstaking examination of the record leads this court to the inevitable conclusion that the special defense of the statute of limitations relied upon by the respondent is not proven. As already noted, the plaintiff herself had the greatest confidence in Dr. Harris and continued treatment with him, including curative attempts, until a time when her suspicions were first aroused by a conversation with a nurse's helper; from that time to the filing of the case only a portion of a year passed. There is no indication that she even had an earlier suspicion that Dr. Harris might be charged with negligence; there existed the greatest trust and confidence in the doctor by his patient and he continued to treat her and act for her as doctor during that period.

It is said in the opinion in *DeVault* v. *Logan,* 223 Cal.App. 2d 802, 806-807 [36 Cal.Rptr. 145]: ". . . it has been held that the statute [of limitations] does not commence to run while the patient and physician relationship continues [citing cases]; or until the plaintiff discovers the injury, or through the use of reasonable diligence should have discovered it [citing cases] whether such actual or constructive discovery occurs prior to or after termination of the doctor-patient relationship [citing cases]; or if there is an act or omission on the part of the doctor which would toll or interrupt the running of the statute or estop the doctor from asserting that the action is barred [citing cases], such as fraudulent concealment of the facts giving rise to the cause of action [citing cases]."

In *Hundley* v. *St. Francis Hospital,* 161 Cal.App.2d 800, 806 [327 P.2d 131], it is said: "The rule is clear, as to malpractice actions, that 'while the physician-patient relation continues the plaintiff is not ordinarily put on notice of the negligent conduct of the physician upon whose skill, judgment and advice he continues to rely.' (*Myers* v. *Stevenson,* 125 Cal.App.2d 399, 401-402 [270 P.2d 885].) Thus, in the

absence of actual discovery of the negligence, the statute does not commence to run during such period (*Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908]), and this is true even though the condition itself is known to the plaintiff, so long as its negligent cause and its deleterious effect is not discovered (*Trombley* v. *Kolts,* 29 Cal.App.2d 699 [85 P.2d 541])."

The situation is thus treated in *Huysman* v. *Kirsch,* 6 Cal. 2d 302, 309 [57 P.2d 908], through an approving reference to the Ohio case of *Gillette* v. *Tucker,* 67 Ohio St. 106 [65 N.E. 865, 93 Am.St.Rep. 639] :

" 'Indeed, it would be inconsistent to say, that the plaintiff might sue for her injuries while the surgeon was still in charge of the case and advising and assuring her that proper patience would witness a complete recovery. It would be trifling with the law and the courts to exact compliance with such a rule, in order to have a standing in court for the vindication of her rights. It would impose upon her an improper burden to hold, that in order to prevent the statute from running against her right of action, she must sue while she was following the advice of the surgeon and upon which she all the time relied.

" 'The facts in the case at bar show a continuous obligation upon the plaintiff in error, so long as the relation or employment continued, and each day's failure to remove the sponge was a fresh breach of the contract implied by the law. The removal of the sponge was a part of the operation, and in this respect the surgeon left the operation uncompleted. See *Akridge* v. *Noble,* 114 Ga. 949 [41 S.E. 78], where this is expressly held.' "

*Stafford* v. *Shultz,* 42 Cal.2d 767, 776-778 [270 P.2d 1], holds:

"The rule has been stated (*Pellett* v. *Sonotone Corp.,* 55 Cal.App.2d 158, 160 [130 P.2d 181]) that the statute of limitations does not commence to run until the plaintiff discovered his injury, or through the use of reasonable diligence, should have discovered it (*Bowman* v. *McPheeters,* 77 Cal. App.2d 795, 798 [176 P.2d 745] ; *Sears* v. *Rule,* 27 Cal.2d 131, 147 [163 P.2d 443]). We must then determine whether the knowledge received by plaintiff on September 2, 1949, that his leg must be amputated put him on notice that defendants had been guilty of negligence in the treatment and care thereof. (See also *Agnew* v. *Larson,* 82 Cal.App.2d 176, 182 [185 P.2d 851] ; *Faith* v. *Erhart,* 52 Cal.App.2d 228, 230 [126 P.2d 151] ; *Petrucci* v. *Heidenreich,* 43 Cal.App.2d 561, 562 [111

P.2d 421]; *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933].)

"In *Bowman* v. *McPheeters*, 77 Cal.App.2d 795, 800 [176 P.2d 745], the court said: 'Perhaps the most significant feature in the present case which makes inapplicable the doctrine of constructive notice is the existence of the relationship between the parties of physician and patient, which in contemplation of law is a fiduciary one. (20 Cal.Jur., p. 1072, § 20.) As fiduciaries it was the duty of defendants to make a full and fair disclosure to plaintiff of all facts which materially affected his rights and interests. This principle has been applied and expressed in one form or another in several recent decisions dealing specifically with the question of fraudulent concealment of a cause of action in its relation to the statute of limitation. [Citations.]'

"In *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 440 [159 P.2d 958], it was said that it was recognized in cases involving a fiduciary relationship that 'facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required' of the injured person. [Citations.] In *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235 [153 P.2d 325], we said: 'As determined in those cases, the confidence growing out of the relationship of doctor and patient imposed upon the physician the duty of refraining from fraudulent concealment, that is, the duty of disclosure when he had knowledge of the facts. . . . Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. [Citations.] Since its voluntary undertaking placed upon the defendant the duty to disclose to the plaintiff the full extent of his injuries and the probable future disability to be expected therefrom, its false representation designed to conceal facts known to it and intended to prevent plaintiff's consulting other physicians and thus hinder him from bringing action until after the running of the statutory period of limitations, must be deemed to amount to fraud upon the plaintiff and to excuse any greater diligence on his part under the facts disclosed by the complaint. No fact as to the plaintiff's condition is alleged which could be deemed to have put him on earlier notice.'

"It would appear from the foregoing, that the fiduciary relationship of physician and patient excused plaintiff from greater diligence in determining the cause of his injury and

that he was not, therefore, put on notice by the knowledge received by him on September 2, 1949 that his leg was to be amputated, that the cause thereof was negligence on the part of these defendants.'' (See also: *Myers* v. *Stevenson*, 125 Cal.App.2d 399, 401 [270 P.2d 885] ; *Ehlen* v. *Burrows*, 51 Cal.App.2d 141, 144 [124 P.2d 82] ; *Petrucci* v. *Heidenreich*, 43 Cal.App.2d 561, 562 [111 P.2d 421] ; *Trombley* v. *Kolts*, 29 Cal.App.2d 699, 707-708 [85 P.2d 541] ; 38 Cal.Jur.2d, Physicians, etc., § 91, pp. 708-711.)

Our conclusion, therefore, is that there was no evidence from which it could be derived that the cause of action was barred by the statute of limitations, and we must turn to the other principal contention made upon the appeal, this time by appellant, that the trial court erred prejudicially in not advising the jury that the doctrine of res ipsa loquitur was applicable.

██ Throughout the entire litigation, counsel for the plaintiff insisted that the doctrine of res ipsa loquitur applied in this case and should have been the basis of the court's instruction to the jury. The contention is pointed up by the trial court's refusal of the res ipsa loquitur instructions proposed by the plaintiff and by the denial by the court of plaintiff's motion for a new trial. It is clear that, if the court committed error in this regard, the error was of sufficient magnitude to require a reversal of the judgment unless defendant's contention that the jury must be deemed to have disposed of the case on the ground of the statute of limitations is sound. The trial judge himself recognized the fact in ruling on the motion for a new trial, saying, ''I will indicate that if the res ipsa was a required instruction that there would be no question that this failure to give it would entitle plaintiff to a new trial.''

The recent cases of *Tomei* v. *Henning*, 67 Cal.2d 319, 322 [62 Cal.Rptr. 9, 431 P.2d 633] and *Clark* v. *Gibbons*, 66 Cal. 2d 399, 408 [58 Cal.Rptr. 125, 426 P.2d 525], as well as earlier authorities clearly support this conclusion of the trial judge. And, since we believe that the doctrine of res ipsa loquitur should have been employed in a proper trial of the case, we have reached the conclusion that the judgment here must be reversed.

The res ipsa loquitur doctrine must have been conditionally introduced as the evidence brought into the case by the plaintiff with regard to negligence and that introduced by the defendant differed sharply. The plaintiff proved by her expert testimony given by Dr. Marsh that in connection with a pan-

hysterectomy any puncture of the bladder and the creation of a vesico-vaginal fistula were necessarily the result of negligence on the part of the operating doctor. Since no one doubts that the operation was completely under the control of Dr. Harris and that the plaintiff cannot be blamed in any way for the creation of the physical result, the elements necessary for the application of the res ipsa loquitur principle all appear under the theory of the plaintiff. This is true even though the theory and the evidence on behalf of the defendant and the plaintiff are at direct odds; the testimony of the defendant doctor and all those who had anything to do with the actual operation plus the expert testimony of Dr. Henry L. Tieche were to the effect that the doctor defendant was not in any way to blame for the unfortunate result of the operation. As stated above, the application of the res ipsa loquitur doctrine should have been conditional; it should not have been adopted and applied by the jury unless that body had first concluded that the mere existence of the vesico-vaginal condition was more likely than not the result of negligence on the part of the doctor.

The instructions tendered by the plaintiff, which were erroneously refused by the court, on this subject were as follows:

"There is a rule of law which is known as the doctrine of res ipsa loquitur upon which I will now instruct you. It is a question of fact for the jury to determine whether or not this doctrine of res ipsa loquitur applies to this case, under the instructions which I will now give you.

"You must decide the following questions concerning the injury involved in this case.

"Is it the kind of injury which ordinarily does not occur in the absence of negligence? This question is to be determined from the evidence presented in this trial by physicians and surgeons called as expert witnesses, including expert testimony in depositions received in evidence.

"Was the injury caused while the plaintiff was exclusively under the care or control of the defendant?

"Was the injury due to any voluntary action or contribution on the part of the plaintiff?

"If, and only if, you find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of negligence, was caused while the plaintiff was exclusively under the care or control of defendant, and was not due to any voluntary action or contribution by the plaintiff, you are instructed as follows:

"From the happening of the injuries involved in this case, an inference may be drawn that a proximate cause of the occurrence was some negligent conduct on the part of the defendant, Charles P. Harris.

"If you draw such inference of said defendant's negligence, then, unless there is contrary evidence sufficient to meet or balance it, you will find in accordance with the inference.

"In order to meet or balance such an inference of negligence, the evidence must show either (1) a definite cause for the injuries not attributable to any negligence of said defendant, or (2) such care by said defendant that leads you to conclude that the injuries did not happen because of said defendant's lack of care but was due to some other cause, although the exact cause may be unknown. If there is such sufficient contrary evidence you shall not find merely from the happening of the injuries that a proximate cause of the occurrence was some negligent conduct on the part of said defendant.

"Where negligent conduct of a party and a preexisting or other natural condition combine and concur to directly produce an injury, the conduct of the negligent person may be a concurring proximate cause of such injury, and in such case the negligent person is not relieved of responsibility for the injury merely because the condition also contributed thereto."

It is said in *Quintal v Laurel Grove Hospital,* 62 Cal.2d 154, 164 [41 Cal.Rptr. 577, 397 P.2d 161] :

"The plaintiffs, out of the mouths of defendants and their witnesses, proved that the injury could occur as a result of negligence. There is also evidence that the injury could occur without negligence. In such circumstances the jury should be instructed that if they find certain facts to be true they should apply the inference involved in res ipsa."

█ It is not for the judge but for the jury to determine the existence of the facts justifying the application of the doctrine. (*Seneris* v. *Haas,* 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124] ; *Edelman* v. *Zeigler,* 233 Cal.App.2d 871, 880 [44 Cal.Rptr. 114].)

█ Here, the testimony from the plaintiff's expert witness was that the injury involved in this litigation is always caused by negligence.

In *Tomei* v. *Henning, supra,* 67 Cal.2d 319, at page 322, the Supreme Court speaking through Chief Justice Traynor said : "Since the question whether, in the light of past experience,

the accident in this case was probably the result of negligence is not a matter of common knowledge among laymen, expert testimony is necessary to determine whether a probability of negligence appears from the happening of the accident. When such testimony is relied upon to establish that probability, it need not be in any particular language. It need only afford reasonable support for an inference of negligence from the happening of the accident alone.'' (See also: *Clark* v. *Gibbons, supra,* 66 Cal.2d 399.)

 The defendant argued in opposition to the motion for a new trial in the lower court that the jury had the right to weigh the opposing testimony of the plaintiff as against the expert evidence of the defendant, and that the verdict represents the considered opinion of the jury. This contention completely overlooks the requirement that the jury had to be properly instructed, and that when, as here, the importation into the case of a doctrine as important as res ipsa loquitur was improperly denied the plaintiff did not have a fair trial and that the proper instruction must, in fact, be given on a new trial of the litigation.

Plaintiff attacks other instructions given by the court. These additional objections seem to us to indicate that counsel for the appellant are ''straining at gnats''; upon a retrial of the case, slight modifications of the wording of the instructions under attack will result in unexceptional charges. For example, the denigration of the instructions which require the plaintiff to prove that the defendant did some particular thing, or omitted to do some particular thing required by the standard of care, and which in essence warned the jury that they must attach negligence to the defendant before finding against him would be clarified through the giving by the court of a res ipsa loquitur instruction. In such circumstances as was stated in *Beary* v. *Smart,* 242 Cal.App.2d 13, 16 [51 Cal.Rptr. 306] : ''. . . the jury would understand that it was meant, only to require that the cause, or causes, *including* any that might be inferred upon application of the doctrine of res ipsa loquitur, be found related to the injury as the operative or effective cause in the case on trial.''

Again, while it is technically insufficient to instruct the jury that the defendant was bound to exercise the reasonable degree of learning, care and skill possessed ''by the average physician and surgeon of this vicinity'' without referring to the specialty of the defendant, there is nothing about the record which would give belief to the jurors that Dr. Harris

was other than a purported expert in his line of medicine and surgery or that they should hold him to any lesser degree of care than would be expected of a specialist. Furthermore, the objection to the instruction with respect to the choice of methods of performing the operation in question was not responsive to any unresolved issue. These attacks are a refined method of objecting to the record which are actually immaterial in view of the other issues decided in this case and they are matters that can be easily made unambiguous by slight changes in the use or rearrangement of words upon the occasion of the second trial.

One additional objection to the instructions, however, deserves further comment. Although the appellant admits that the jury was in several instructions properly advised that the time to measure the one-year period of limitations within which an action for malpractice must be started begins, not at the time of an operation which is claimed to be the source of the right of action, but at the time of the discovery of the alleged negligence of the defendant (*Thompson* v. *County of Fresno,* 59 Cal.2d 686, 689, fn. 1 [31 Cal.Rptr. 44, 381 P.2d 924] ; *Huysman* v. *Kirsch, supra,* 6 Cal.2d 302, 312; *Myers* v. *Stevenson, supra,* 125 Cal.App.2d 399, 402; *Agnew* v. *Larson,* 82 Cal.App.2d 176, 179-181 [185 P.2d 851] ; *Faith* v. *Erhart,* 52 Cal.App.2d 228, 230 [126 P.2d 151] ; *Hundley* v. *St. Francis Hospital, supra,* 161 Cal.App.2d 800, 806). It is claimed that the trial court committed reversible error by also advising the jury that the statute of limitations ''. . . does commence to run despite the physician-patient relationship if the plaintiff has in fact discovered the injury or through the use of reasonable diligence should have discovered it.'' The point of the attack on this group of instructions is in the assumption by appellant's counsel that the use of the word ''injury'' in the instruction necessarily means the physical injury itself, rather than the tort committed by a defendant in wrongfully causing an injurious consequence to the patient. Webster's Third New International Dictionary gives as one meaning of the word: ''A violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong—distinguished from *harm.*'' This meaning has often been employed in malpractice actions (e.g., at random, *DeVault* v. *Logan, supra,* 223 Cal. App.2d 802, 807; *Petrucci* v. *Heidenreich, supra,* 43 Cal.App. 2d 561, 562; *Garlock* v. *Cole,* 199 Cal.App.2d 11, 15 [18 Cal.Rptr. 393] ). Thus, the attack by appellant upon this in-

struction resulted from a failure to give a proper connotation to the word as used in the instruction. Considering the instructions as a whole on this subject, there cannot be any proper contention that the jury was misled.

For the failure of the court to give conditional res ipsa loquitur instructions, the judgment is reversed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied September 26, 1968, and respondent's petition for a hearing by the Supreme Court was denied October 23, 1968.