[Civ. No. 14783. Fourth Dist., Div. One. Dec. 13, 1977.]

STEPHEN GRAY, Plaintiff and Appellant, v.
JAMES REEVES et al., Defendants and Respondents.

**COUNSEL**

Harney & Moore and Robert D. Walker for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees & Sharkey, Peter L. Dean, Holt, Rhoades & Hollywood and Dan H. Deuprey for Defendants and Respondents.

**OPINION**

**COLOGNE, J.**—Stephen Gray filed a complaint against James Reeves, M.D., and McKesson Laboratories alleging negligence occasioned by his use of a drug called prednisone. After Gray's depositions were taken, Reeves and McKesson moved for summary judgment on the grounds the complaint was barred by the statute of limitations. The motion was denied but was renewed six months later. This second motion was granted and judgment entered in favor of Reeves and McKesson. Gray appeals.

In 1968 Gray began treatment with Reeves who prescribed prednisone to help Gray gain weight and improve his anemic condition. Gray was suffering from infectious hepatitis. Gray took the drug over an extended period of time renewing his prescription from time-to-time. No one but Reeves prescribed the drug.

By May 1970 Gray was having problems with his legs and was on crutches. On January 29, 1971, after Gray had been on crutches for about six months, he went to Reeves for the last time. At that time, Reeves advised Gray that he had aseptic necrosis, a condition of degeneration of the hip socket, and it was probably caused by the drug prednisone. According to Gray's testimony at a deposition Reeves said: ". . . 'Steve, you have aseptic necrosis, and it is probably caused from the prednisone, and they can treat you,' or 'You need an orthopedic specialist,' or words to that effect, and that I could get treatment at University Hospital."

At that time Gray understood his hip condition was "probably caused" by the prednisone and he repeated it to his mother, Harriet B. Gray. On the day after his conversation with Reeves, he entered University Hospital and repeated Reeves' statements to several doctors. The hospital staff also explained the nature of aseptic necrosis at that time.

Corrective surgery was performed on Gray in May 1971.

In August 1973 Gray filed his complaint charging Reeves with negligence in the care and treatment of Gray by reason of his prescribing the drug, and negligence in Reeves' failure to fully inform Gray of the consequences and hazards involved with use of the drug; and against McKesson for failure to warn as to the consequences and hazards, breach of warranty as to the quality of the drug for the use intended and sale of a defective drug. Causes of action based on strict liability in tort and breach of warranty were dismissed along with the claim for punitive damages. The answers of Reeves and McKesson were filed denying any wrongdoing and raising the issue of the statute of limitations.

Gray's deposition was taken December 17, 1973. He filed answers to his written interrogatories on the following day. On November 4, 1974, about one year later, Reeves filed a motion for summary judgment based on the answers to interrogatories and the deposition of Gray. Since the deposition had not yet been signed by Gray, Reeves' attorney attempted to put Gray's answers taken from the unsigned deposition into his own affidavit.

On January 15, 1975, Gray filed a declaration stating while Reeves had told him in January 1971 the cause of his aseptic necrosis might have been the prednisone, he did not know the "negligent" cause or that it was a result of Reeves' acts or omissions. The declaration states Reeves told Gray his hepatitis was life threatening and he had to take the drug to stay alive. In February 1971, according to the declaration, Reeves again told him that without the prednisone he would not have survived the attacks and that preservation of his life was more important than the injury to the hips. In the deposition Gray stated by May 1971 he knew Reeves had done something wrong in prescribing the drug but by this January 15, 1975 declaration Gray said that response in the deposition was in error and he would correct the deposition before signing it. It is his present position he knew the cause of his problem at that time but did not know the "negligent cause." He asserts that until he saw his lawyer, no one ever told him Reeves was negligent in prescribing the drug.

At the hearing in January 1975 the trial court refused to receive the deposition into evidence since it had not been signed and denied the motion for summary judgment.

Attorneys for Reeves then made repeated efforts to get Gray to sign the deposition, but he did not do so. Five months after the denial of the first motion and one year and seven months after the taking of the deposition Reeves and McKesson moved for leave to file plaintiff's deposition over the signature of the court reporter pursuant to Code of Civil Procedure section 2019, subdivision (e)[1] and for summary judgment, again on the grounds the statute of limitations barred recovery.

---

[1]Code of Civil Procedure section 2019, subdivision (e) reads as follows: "Unless the parties agree on the record to another procedure for reading, correcting, and signing the original of the deposition, when the testimony is fully transcribed the officer shall notify the deponent and counsel in writing that the original of the deposition is available for reading, correcting and signing at the office of the officer, and shall remain so available during business hours of business days for a period of 30 calendar days following such notification. The examination and reading of the transcribed testimony may be waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition. The deponent may correct or approve or refuse to approve the deposition for a period of 30 days following the notification prescribed in this subdivision by means of a letter addressed and mailed or delivered to the transcribing officer indicating any changes to be made, approval, or refusal to approve the deposition. Such changes, approval, or refusal to approve the deposition, when made by letter, shall be equivalent to personal changes, approval, or refusal to approve the deposition.

"If the deponent fails to appear at the office of the officer or notify him by letter as provided in this subdivision within such 30-day period, or if the witness so appears or sends such letter but refuses to approve or sign the deposition, the officer shall indicate

Gray filed a counterdeclaration incorporating his earlier declaration. On the day of the hearing on this motion he signed the deposition making the following corrections:

" 'Q. When did you first feel that Dr. REEVES had done something wrong? A. Well, I more or less felt all along that Dr. REEVES did something wrong.' Changed to: 'I don't know.'

" 'Q. And it would be sometime then, between February of 1971 and May of 1971 that you felt that Dr. REEVES had done something wrong? A. Yes.' Changed to: 'No, that is when I learned what aseptic necrosis was.'

" 'Q. And when you felt that he had done something wrong, did you feel that he was wrong in connection with giving you prednisone? A. Yes.' Changed to: 'That is what I was eventually told by my counsel in 1973.' "

In considering a motion for summary judgment we are governed by well-settled principles of law tersely stated in *R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785]. ■ The trial court must determine whether the opponent has by affidavit or declaration presented any facts that give rise to a triable issue. The court does not resolve conflicting factual allegations, for the purpose of the procedure is to discover whether the parties have evidence requiring assessment at trial. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for trial. Accordingly, the affidavits and declarations of the moving party are strictly construed and those of his opponent; even if in conclusionary terms, are liberally construed (see also *Howe* v. *Pioneer Mfg. Co.,* 262 Cal.App.2d 330, 336-337 [68 Cal.Rptr. 617]).

■ We are also mindful of the rule expressed in *Leasman* v. *Beech Aircraft Corp.,* 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768], that when a defendant can establish his defense with the plaintiff's admission sufficient to pass the strict construction test imposed on the moving party, the credibility of the admissions are valued so highly that the contradicting affidavits may be disregarded as irrelevant, inadmissible or evasive

---

on the original the fact that the deponent failed to appear, or the fact that the deponent refused to sign together with any reason given therefor, and file it with the court. Thereafter the deposition shall have the same force and effect as though it had been read, corrected and signed by the deponent, unless on a motion to suppress under subdivision (d) of Section 2021 of this code the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part."

(see also *D'Amico v. Board of Medical Examiners,* 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10]; *King v. Andersen,* 242 Cal.App.2d 606, 610 [51 Cal.Rptr. 561]). The reason for this rule was spelled out in *D'Amico, supra,* which at page 22 states, ". . . admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts." (See Bauman: *California Summary Judgment: A Search For a Standard,* 10 UCLA L.Rev. 347.)

There is no reason to draw a distinction between an attempt to counter an admission by affidavit and an attempt to counter an admission by changing the content of an answer given by a party directly in the deposition, especially where there is no assertion the original answer was incorrectly transcribed or the question was misleading or ambiguous. In both the changed affidavit and changed deposition cases the credibility of the parties is held up for examination by the contradicting statements, the first of which constitutes a reliable admission against interest. The trial court may accept the first and reject the later of these contrary positions. This choice is particularly called for where, as here, the deponent waits 19 months to make the changes and is then inspired to make the changes by pressures attending an apparently grantable motion for summary judgment.

■ In the case before us Gray testified under oath Reeves had prescribed prednisone for his infectious hepatitis and that on January 29, 1971, he was told by Reeves his hip problems were probably caused by the drug. There is no dispute in these facts. Gray's testimony, however, went further saying that between February 1971 and May 1971 he felt Reeves had done something wrong. (See *Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 102 [132 Cal.Rptr. 657, 553 P.2d 1129].) It is this testimony he wants to correct. In his affidavit he says, "[t]he testimony there set forth [that Reeves had done something wrong] is erroneous. I must have been confused by the other references to the time period of February to May, 1971." With only these brief words of explanation, he then attempts to suggest a position diametrically opposed to his testimony. His credibility on the point of knowledge of Reeves' error was subject to scrutiny and the court was acting properly in accepting the testimony of the deposition first given admitting certain facts which bear on the issue of the statute of limitations and rejecting the declaration which attempted to put back into the case a triable issue of fact.

It is in the context of this factual situation we apply the law relative to the statute of limitations.

Code of Civil Procedure section 340.5 applicable in the case of Reeves and in effect at the time, read as follows: *"In an action for injury or death against a physician* or surgeon, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor, clinical laboratory bioanalyst, clinical laboratory technologist, veterinarian, or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, [*the period for the commencement of the action is*] four years after the date of injury or *one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury,* whichever first occurs. This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him." (Italics added. Stats. 1970, ch. 360.)

Thus the date for accrual of a cause of action in a medical malpractice action such as this one against Reeves is the date when the injured party discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it (*Wozniak* v. *Peninsula Hospital,* 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84]).

Code of Civil Procedure section 340, subdivision 3 generally states in part:

"Within one year:

"
.　.　.　.　.　.　.　.　.　.　.　.　.　.　.

"3. *An action* for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or *for injury to* or for the death of *one caused by the wrongful act or neglect of another,* or by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement, or against any person who boards or feeds an animal or fowl or who engages in the practice of veterinary medicine as defined in Business and Professions Code Section 4826, for such person's neglect resulting in injury or death to an animal or fowl in the course of boarding or feeding such animal or

fowl or in the course of the practice of veterinary medicine on such animal or fowl." (Italics added.)

This statute is applicable to the cause of action against McKesson causing personal injury as a result of ingesting a drug. In *Warrington v. Charles Pfizer & Co.,* 274 Cal.App.2d 564, 569-570 [80 Cal.Rptr. 130], the court said: "Analysis of the cited cases indicates to us that when personal injury is suffered without perceptible trauma and by silent and insidious impregnation as a consequence of the act or omission of another, who knows, or is charged with the responsibility of knowing that such act or omission may result in personal injury, and the injured person is unaware of the cause of his injury, and as a reasonably prudent and intelligent person could not, without specialized knowledge, have been made aware of such cause, *no action for tort resulting from such cause begins to accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury.*" (Italics added.)

A one-year statute of limitations thus applies to both Reeves and McKesson and begins to run when the plaintiff discovers the injury and its negligent cause or by the exercise of reasonable diligence should have discovered it (*Mock* v. *Santa Monica Hospital,* 187 Cal.App.2d 57, 64 [9 Cal.Rptr. 555]). In these cases a question always exists whether the plaintiff's information with respect to the origin of the injury was sufficient to put him on inquiry as to the instance of negligence on the part of the doctor or drug firm. As stated in *Mock, supra,* at page 66, "a prudent person would believe that if, in the course of an operation at one point on the body, a serious and painful injury occurred to another part of the body, there was cause for an investigation for the purpose of determining whether there was fault on the part of the surgeons" upon which the negligence or wrongful act conduct may be based (see *Whitfield* v. *Roth,* 10 Cal.3d 874, 888-889 [112 Cal.Rptr. 540, 519 P.2d 588]). This brings into play the rule so frequently announced in this state that as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts (*Bathke* v. *Rahn,* 46 Cal.App.2d 694, 696 [116 P.2d 640]; Civ. Code, § 19).[2]

---

[2]Civil Code section 19 reads as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

In *DeVault* v. *Logan*, 223 Cal.App.2d 802 [36 Cal.Rptr. 145] the court held that plaintiff who knew she had a broken leg though the doctor advised her it was only bruised was aware of the "injury" and the negligent cause and the statute began running at that point. She could *not* rely on waiting until her attorney told her that was negligence for the statute to start running (see also *Tell* v. *Taylor,* 191 Cal.App.2d 266, 270-271 [12 Cal.Rptr. 648]).

█ Here Gray knew he was suffering from deterioration of the hip socket, a malady different from what he was being treated for. It cannot be disputed Gray knew of the injury since he was on crutches for six months. He does not deny the cause of the injury was explained to him on January 29, 1971, and he clearly understood the drug prednisone had probably caused the problem. He also knew at that time Reeves was the only one who had prescribed the drug and McKesson was the manufacturer. Since he was no longer under Reeves' care after that date it cannot be successfully asserted he was mislead or that the statute was tolled.[3]

We believe this is enough to put Gray on notice an injury had occurred and the drug Reeves prescribed was the actionable cause. █ That the drug was negligently prescribed was a matter constructively within Gray's knowledge and he is chargeable with knowledge of the fact. In any event, however, Gray admitted in the deposition that he knew Reeves had been wrong in the prescribing of the drug and he knew that before May 1971 when he was operated on at University Hospital by another doctor. Clearly, the statute of limitations began to run on that date. Since more than one year expired before the filing of the complaint in August 1973 two years and three months later, the action was barred by the statute of limitations.

Gray's declaration states he was told this drug was given to him to prevent his death from hepatitis, an immediate danger he faced at that time. Assuming this raises a triable issue as to a material fact under the rules governing the court in summary judgment proceedings (Code Civ. Proc., § 437c), it would be a matter which tolls the statute only insofar as the four-year statute of limitations is concerned and has no application where the plaintiff has notice of the injury and the actionable cause

---

[3]It is the general rule the statute of limitations does not run while the doctor-patient relationship continues (*Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908]; *DeVault* v. *Logan, supra,* 223 Cal.App.2d 802, 806).

(Code Civ. Proc., § 340.5; *Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d 93, 99-100).

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.