[Civ. No. 19279. First Dist., Div. Two. Apr. 17, 1961.]

FANNIE T. M. TELL, Appellant, v. WESLEY TAYLOR, Respondent.

Morton L. Silvers and James R. Cunha for Appellant.

Hadsell, Murman & Bishop and Norman S. Menifee for Respondent.

KAUFMAN, P. J.—Appellant, Fannie T. M. Tell, filed her complaint against the respondent, Wesley Taylor, alleging two causes of action, the first for malpractice, the second for

deceit. Respondent in his answer denied both causes of action and alleged the statute of limitations (Code Civ. Proc., § 340, subd. 3) as an affirmative defense to both causes. Thereafter, respondent filed his motion for a summary judgment pursuant to section 437c of the Code of Civil Procedure. Both sides filed affidavits and points and authorities and after a hearing and argument, respondent's motion was granted as to both causes of action and a judgment entered in his favor.

On this appeal from the judgment, it is argued that the trial court erred in: (1) granting the respondent's motion for a summary judgment as the affidavits raised a triable issue of fact; (2) concluding that the statute of limitations was applicable as to both causes of action.

The first argument on appeal is that the trial court erred in granting a summary judgment because the affidavits raised a triable issue of facts, i.e., whether both causes of action were based on the same facts. ██ ██ While we are well aware that the summary judgment procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods of determining issues of fact, the granting or denying a motion for summary judgment is determined by the sufficiency of the affidavits on file and the affidavits in support of the motion should be strictly construed and those of the opponent liberally construed (*Family Service Agency of Santa Barbara* v. *Ames,* 166 Cal.App.2d 344 [333 P.2d 142]).

Respondent's affidavit reveals the following facts: On June 22, 1957, the appellant fell in front of her fireplace and injured her left hip. On June 23, the respondent first saw her at her home, and again on June 24, 27, 29, and July 1, 8 and 13. On each occasion, the respondent, an osteopathic physician, gave her general manipulative treatment and attempted to determine whether the soreness might be due to a fracture. When the respondent saw the appellant on June 23 and on several occasions thereafter, he urged that X-rays be taken of the left hip to determine whether or not there was a fracture. Respondent urged the appellant and her husband to have X-rays taken but the appellant refused until July 15. On July 15, 1957, X-rays were taken at the respondent's office, and revealed a fracture near the hip joint. The respondent immediately told the appellant about the fracture and advised her to have it treated by an orthopedic specialist. The respondent did not see or talk to the appellant after her departure from his office on July 15, 1957; he did, however,

have two telephone conversations with the appellant's husband [one about July 20 and one a week later] to inquire how the appellant was getting along.

Appellant's affidavits indicate that the respondent treated her on the dates indicated above; that throughout this time, he continually assured her and her husband that she would be all right and sustain no permanent injury; that even after the X-rays of July 15, which revealed the fracture, he told her not to worry about the future and that her bone would knit and heal in due course of time, and all she had to do was to be patient and wait.

Appellant's affidavits further indicate that after determination of the fracture, she was immediately placed under the care of another doctor and never again seen or treated by the respondent. Surgery was performed on appellant's hip in July 1957, and the appellant and her husband were informed in July 1957 that it would take a long time until her permanent condition could be determined. About March 16, 1958, additional X-rays of the appellant were taken and revealed that the pin inserted in her leg in the operation of July 1957 had slipped, so that the bone had not healed and her injury was permanent.

On a motion for summary judgment under section 437c of the Code of Civil Procedure, the purpose of the motion is to discover whether or not there are triable issues of fact. If the opposition affidavit sets up facts showing that there are triable issues of fact, such facts must be accepted as true, and the motion denied (*Coyne* v. *Krempels*, 36 Cal.2d 257, 260 [223 P.2d 244]). However, the counteraffidavit must show facts from which it appears that the opposing party has a good cause of action on the merits (*Johnson* v. *Holt*, 173 Cal.App.2d 107 [342 P.2d 398]). On the other hand, if the positive affidavit in support of the motion is sufficient to support the granting of the summary judgment and if the counteraffidavit of the opposing party does not show any triable issue of fact, then the motion for summary judgment should be granted (*Keylon* v. *Kelley*, 188 Cal.App.2d 490 [10 Cal.Rptr. 549]). We think that in the instant case, the trial court properly followed all of the above-mentioned rules, and properly determined that there was no issue of fact to be tried, that the issue was one of law alone, and that the summary judgment procedure was appropriate (*Keylon* v. *Kelley, supra*).

We turn now to the remaining contentions on appeal, which are that the trial court as a matter of law erred in concluding that both causes of action alleged by the appellant were barred by the statute of limitations. As indicated above, it is admitted that the respondent did not see or treat the appellant at any time after July 15, 1957. On January 22, 1959, the appellant filed her complaint in this action alleging for her first cause of action for malpractice that the permanent injury to her hip was the proximate result of the respondent's negligence in his examination, diagnosis and treatment of her hip from June 23, 1957, to July 15, 1957, and that she could not have known of his negligence until March 16, 1958; for her second cause of action for deceit, appellant alleged that from June 23, 1957, to July 15, 1957, the respondent wilfully and knowingly represented to her that she had sustained a serious injury and that no X-rays were necessary, and that the best treatment for her condition was active and vigorous manipulation of her left hip and leg; that further, on July 15, 1957, after the X-rays had revealed the fracture, the respondent further represented to her that her injury was of no consequence and would heal in due time.

Code of Civil Procedure, section 340, subdivision 3, provides that the statute of limitations in actions against a physician for malpractice or negligence is one year. The statute runs from the day on which the alleged negligent acts were committed (*Wetzel* v. *Pius,* 78 Cal.App. 104 [248 P. 288] ; *Agnew* v. *Parks,* 172 Cal.App.2d 756 [343 P.2d 118]), except that the statute does not run during the time a plaintiff is ignorant of the cause of his injury and could not with reasonable care and diligence ascertain such cause (*Stafford* v. *Shultz,* 42 Cal.2d 767 [270 P.2d 1]). Appellant here, relying on *Agnew* v. *Larson,* 82 Cal.App.2d 176 [185 P.2d 851] ; *Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908] ; *Trombley* v. *Kolts,* 29 Cal.App.2d 699 [85 P.2d 541] ; *Costa* v. *Regents of University of California,* 116 Cal.App.2d 445 [254 P.2d 85], and *Stafford* v. *Shultz, supra,* attempts to argue that she did not discover respondent's negligence in the diagnosis and treatment of her injury until March 16, 1958, and that, therefore, the action is not barred by the statute. There is no merit in this contention, for while the statute of limitations does not commence to run in an action of this kind until the plaintiff discovers his injury, or through the use of reasonable diligence should have discovered it (*Stafford* v. *Shultz, supra*), still the facts as disclosed by appellant's affidavit here show

that the appellant had full knowledge of the respondent's negligence after the X-rays on July 15, 1957, over a year and a half before the filing of this action on January 22, 1959. Her affidavit states that the doctor performing the surgery told her in July 1957, that it would take a long time until her permanent condition could be determined. She knew in July 1957, that her future condition was in doubt and that respondent's diagnosis and treatment were in error. It is admitted that after July 15, 1957, the respondent never saw or treated the appellant again until the filing of this action; there is also evidence that appellant's permanent injury could have been caused by the slipping of the pin inserted by Dr. Meyer during the operation of July 17, 1957. Therefore, even assuming that some injury was caused to the appellant by the respondent's negligence in the diagnosis and treatment of her injuries from June 23, 1957, to July 15, 1957, any cause of action based upon that negligence is clearly barred by the statute of limitations (*Winkler* v. *Southern Calif. etc. Medical Group,* 141 Cal.App.2d 738 [297 P.2d 728]).

As to her second cause of action for deceit, the appellant argues that the trial court erred as the statute of limitations for fraud is three years under subsection 4 of section 338 of the Code of Civil Procedure. However, appellant has cited no authority in this state or elsewhere to indicate that it is possible to extend the statute of limitations in a personal injury action by bringing it on a theory of fraud. Rather, even though the plaintiff alleges false representations on the part of the physician or fraudulent concealment, our courts have always treated the action as one for malpractice (*Stafford* v. *Shultz, supra*; *Bowman* v. *McPheeters,* 77 Cal.App.2d 795 [176 P.2d 745]). The same is apparently true in other jurisdictions (see *Kleinmen* v. *Lack* (1958), 6 App.Div.2d 1046 [179 N.Y.S.2d 194]; *Tulloch* v. *Haselo* (1926), 218 App.Div. 313 [218 N.Y.S. 139]).

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied May 17, 1961.