Filed 1/15/15  Sam v. Garfield Beach CVS CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JOSEPH SAM, | |
| Plaintiff and Appellant, | E057531 |
| v. | (Super.Ct.No. RIC1109016) |
| GARFIELD BEACH CVS, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Gomez Law Group, Alvin M. Gomez and Peter B. Nichols for Plaintiff and Appellant.

Edwards Wildman Palmer LLP, Jon-Paul Lapointe and Jennifer Chia-Wen Hsu for Defendant and Respondent.

I

INTRODUCTION

This case arises from defendant Garfield Beach CVS, LLC (CVS) incorrectly

1

filling plaintiff Joseph Sam's prescription, resulting in plaintiff overdosing on Doxepin (sleeping pills).  Sam appeals from judgment entered after the trial court granted CVS's motion for summary judgment on the ground plaintiff's professional negligence (malpractice) and fraud claims were barred by the one-year statute of limitations.  Plaintiff contends there were material triable issues of fact as to whether his claims were barred by the statute of limitations.  Plaintiff also argues his fraud claim is a proper theory of recovery, separate and distinct from his malpractice claim.  We conclude it is undisputed plaintiff's malpractice and fraud claims are barred by the one-year statute of limitations under Code of Civil Procedure section 340.5.[1]  Even if plaintiff's fraud claim is not barred, plaintiff is unable to prevail on his fraud claim as a matter of law.  Summary judgment is therefore affirmed.

## II

## FACTS AND PROCEDURAL BACKGROUND

In 2009, Dr. Schwartz began prescribing Doxepin 10 mg for plaintiff's insomnia.  On March 11, 2010, plaintiff picked up his refilled prescription for Doxepin 10 mg at CVS.  CVS mistakenly filled the prescription with Doxepin 100 mg, instead of Doxepin 10 mg, as prescribed.  Plaintiff did not recall anyone at CVS saying anything regarding filling his prescription.  He merely went to CVS, as he had many times before and picked up his prescription.  After plaintiff arrived home from CVS on March 11, 2010, he took two to three of the Doxepin pills, as prescribed.  Before taking the pills that evening,

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

plaintiff noticed the pills were larger and a different color than the Doxepin pills he had previously taken. The pills also were in a larger bottle.

Plaintiff testified at his deposition that the next thing he remembered after taking the pills, was waking up in the hospital that same evening. Plaintiff was discharged from the hospital either late in the evening on March 11, 2010, or early in the morning on March 12, 2010. It took about one week for the immediate effects of the Doxepin overdose to wear off. On the way home from the hospital, plaintiff told his friend, Robert Turner, who drove him home, that he had been hospitalized because of the medication he took. When asked during his deposition why he thought the medication caused his hospitalization, plaintiff said, "Because that could be the only reason."

When plaintiff returned home from the hospital, he looked at the Doxepin bottle and noticed the milligram dosage was different than previous refills. The dosage stated on the bottle was 100 mg. Plaintiff thought this might have caused him to be in the hospital. Plaintiff called Dr. Schwartz on March 12, 2010, and on March 15, 2010, saw him for a follow-up appointment, as instructed by the hospital. Plaintiff told Dr. Schwartz CVS gave him 100 mg pills and showed him the pills. Dr. Schwartz told plaintiff he did not write a prescription for 100 mg pills and that he would never write a prescription for that high a dosage. Dr. Schwartz said he wrote the prescription for 10 mg pills and told plaintiff not to go back to CVS. When Dr. Schwartz told plaintiff this, plaintiff suspected CVS had made a mistake refilling his Doxepin prescription. Plaintiff was not certain, however, because he thought CVS may have given him generic pills and

3

did not know what generic meant. He thought it meant a higher dosage would be given if a drug was generic because the generic drug was not as strong.

Plaintiff's relatives told him that others suspected he may have purposely overdosed. Plaintiff was concerned this would impact his job as a police officer. He also thought he might be found at fault for not noticing before taking the pills that CVS had given him the incorrect dosage. Plaintiff stated in his declaration supporting opposition to CVS's summary judgment motion that plaintiff was concerned he might be accused of overdosing. He had been told people at work suspected he had intentionally overdosed.

Plaintiff stated in his declaration that he initially contacted attorney Alvin Gomez because plaintiff was not sure what had happened when he overdosed or how his employment as a police officer might be affected. Plaintiff wanted to know what his rights were. He did not seek legal advice regarding CVS until April 2010, when he spoke to Gomez concerning whether he had a case against CVS. Plaintiff also signed authorizations allowing release of his medical records to Gomez. Gomez told plaintiff he could not file a lawsuit for malpractice until plaintiff obtained an admission from CVS or a declaration by an expert medical witness stating malpractice had occurred. CVS did not admit to plaintiff that it had erred until it sent a letter dated May 5, 2010, which plaintiff received on May 7, 2010. Prior to May 5, 2010, CVS employees left multiple phone messages requesting plaintiff to call CVS. CVS did not mention that it had misfilled his prescription, and plaintiff did not return CVS's calls.

After CVS admitted in its letter that it had erred, plaintiff retained Gomez on May 13, 2010, and filed the instant lawsuit on May 5, 2011. Plaintiff's amended complaint

4

(complaint) filed in September 2011, includes causes of action for medical malpractice and fraud, based on CVS negligently misfilling plaintiff's prescription and representing that it was correctly filled as prescribed. CVS filed a motion for summary judgment, asserting that plaintiff's complaint was barred by the statute of limitations and that plaintiff could not establish a fraud claim. Plaintiff filed opposition. On September 5, 2012, the trial court heard and granted CVS's motion for summary judgment.

III

STANDARD OF REVIEW

We review a trial court's order granting a motion for summary judgment "de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018 (*Allstate Ins. Co.*).)

A defendant moving for summary judgment has the initial burden to make a prima facie showing there is no merit to a cause of action and that therefore the defendant is entitled to judgment as a matter of law. (§ 437c, subd. (p)(2); *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720.) To satisfy this burden, the moving defendant must show that at least one of the elements of the cause of action has not been established by the plaintiff and cannot reasonably be established, or must establish the elements of a complete defense to the cause of action. (§ 437c, subds. (*o*), (p)(2); *Allstate Ins. Co., supra,* 45 Cal.4th at p. 1017; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484 (*Jessen*).) If the moving defendant meets this burden, then the burden shifts to the plaintiff to show that there is at least one triable issue of material fact regarding the cause

5

of action or as to the complete defense.  (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*); *Jessen,* at p. 1484.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar,* at p. 850.)

IV

MALPRACTICE CAUSE OF ACTION

Plaintiff contends the trial court erred in ruling plaintiff's malpractice cause of action was barred by the statute of limitations under section 340.5.  Plaintiff alleges in his first cause of action for malpractice that on March 11, 2010, CVS breached its duty of care owed to plaintiff by negligently refilling plaintiff's prescription by giving plaintiff pills that were 10 times the prescribed dosage.  CVS's negligence allegedly caused plaintiff to sustain injuries and damages.  Plaintiff further alleges that he discovered CVS's negligence on May 7, 2010.

Section 340.5 sets forth the statute of limitations applicable to this medical malpractice case.  (*Jefferson v. County of Kern* (2002) 98 Cal.App.4th 606, 610.)  Section 340.5, subdivision (1), defines a health care provider as including any person licensed or certified pursuant to Division 2 of the Business and Professions Code.  Pharmacists and pharmacies are licensed pursuant to Division 2 of the Business and Professions Code and thus fall within this statutory definition of health care provider.  (See Bus. & Prof. Code, §§ 4000-4125.)

6

Section 340.5 states that in an action for injury or death against a health care provider, based upon alleged professional negligence, the action shall be commenced within three years after the date of injury, or one year after the plaintiff discovers, or through reasonable diligence should have discovered, the injury and its negligent cause, whichever occurs first. Section 340.5 further provides that in no event shall the limitations period exceed three years unless tolled because of (1) proof of fraud; (2) intentional concealment; or (3) the presence of a foreign body, without any therapeutic or diagnostic purpose or effect, in the injured person. (*Rose v. Fife* (1989) 207 Cal.App.3d 760, 767-768; *Jefferson v. County of Kern, supra,* 98 Cal.App.4th at p. 610, fn. 15.)

The one-year limitation period applies in the instant case. Plaintiff argues the one-year limitation period did not begin running until May 7, 2010, when he received the letter from CVS advising him that CVS had erred in refilling plaintiff's Doxepin prescription. Plaintiff asserts this was when he first became aware his overdose was caused by CVS. Up until then, plaintiff was concerned he did something wrong and thought the discrepancy in the dosage might have been because the pills were generic. Plaintiff was unaware of the reason for CVS employees calling him. Plaintiff argues these facts raise a triable issue as to whether the one-year statute of limitations began running before May 7, 2010. We disagree.

Notice triggering the statute of limitations "may be actual or constructive. (Civ. Code, § 18.) Actual notice is 'express information of a fact,' while constructive notice is that 'which is imputed by law.' (*Ibid.*) A person with 'actual notice of circumstances sufficient to put a prudent man upon inquiry' is deemed to have constructive notice of all

7

facts that a reasonable inquiry would disclose.  (Civ. Code, § 19; [citations].)"  (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1318-1319 (*E-Fab*).)

Even though normally the accrual of the statute of limitations is a question of fact (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 (*Fox*)), when reasonable minds can draw only one conclusion from undisputed facts, accrual may be determined as a matter of law.  (*Ibid.*)  "More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.'  [Citation.]  As our state's high court has observed: 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge.  [Citation.]  It is a question for the trier of fact.'  [Citation.]  'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.'  (*Snow v. A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 128 [reversing summary judgment].)"  (*E-Fab, supra,* 153 Cal.App.4th at p. 1320.)  Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer or summary judgment, "'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.'"  (*E-Fab,* at p. 1320, quoting *Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 527.)

When applying the discovery rule to the statute of limitations, we must therefore determine "when and how the plaintiff discovered an injury, whether the plaintiff conducted a reasonable investigation, when such an investigation would have brought to light the factual basis for the cause of action for which the plaintiff sought delayed

8

accrual, and whether the plaintiff could have discovered the factual basis for a cause of action earlier by exercising reasonable diligence." (*Fox, supra,* 35 Cal.4th at p. 810.)

As the California Supreme Court explained in *Fox, supra,* 35 Cal.4th at pages 807-808, "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury[] if they have ""'information of circumstances to put [them] *on inquiry*'"" or if they have ""'*the opportunity to obtain knowledge* from sources open to [their] investigation.'"" [Citations.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."

Undisputed evidence in the instant case established that, prior to May 7, 2010, plaintiff had actual or constructive notice his overdose was caused by taking Doxepin 100 mg pills and that CVS was negligent in causing his injury by misfilling his prescription with 100 mg Doxepin pills, instead of the prescribed 10 mg pills. Plaintiff testified that, after picking up his refilled prescription on March 11, 2010, plaintiff took two to three pills that night, as prescribed. Plaintiff was hospitalized of an overdose and, on his way home from the hospital, told his friend that his hospitalization "was probably because of my medication I took." Plaintiff said he thought this "[b]ecause that could be the only reason."

Plaintiff testified he tried to "figure out what happened." When Plaintiff got home early in the morning, he checked the Doxepin bottle and realized "the milligrams were

9

different." Plaintiff noticed the dosage written on the bottle was 100 mg, which was different from what he was prescribed. When plaintiff noticed this, he thought, "this might have caused me to be in the hospital." On March 12, 2010, after plaintiff got home, he called Dr. Schwartz, and when he saw Dr. Schwartz on March 15, 2010, plaintiff told him CVS had given plaintiff Doxepin 100 mg. Dr. Schwartz told plaintiff "he didn't write the prescription for that and for me not to go back to CVS." Dr. Schwartz told plaintiff he wrote the prescription for 10 mg and that he would never write the prescription that high. During plaintiff's deposition, plaintiff was asked if he knew, when Dr. Schwartz told him he did not write the Doxepin prescription for 100 mg, that CVS made a mistake in refilling his Doxepin prescription. Plaintiff replied that he did not know this but he "had suspicions."

Plaintiff's deposition testimony and declaration establish that he was aware he overdosed from taking Doxepin, that CVS was responsible for refilling his prescription, and that he received Doxepin 100 mg, rather than Doxepin 10 mg prescribed by his doctor. Plaintiff also testified he suspected CVS had erred in filling his prescription and immediately checked the Doxepin bottle when he returned from the hospital. He noticed that the bottle was for 100 mg, not Doxepin 10 mg. Plaintiff also noticed the pills and bottle were larger than the previous Doxepin pills and bottle received from CVS. Plaintiff informed Dr. Schwartz of these facts and Dr. Schwartz told plaintiff the Doxepin 100 mg pills CVS gave him were not what Dr. Schwartz had prescribed. Dr. Schwartz also told plaintiff not to go back to CVS for his prescriptions. These facts were more than sufficient to trigger the running of the one-year statute of limitations before May 7,

10

2010, as a matter of law. It is undisputed that shortly after plaintiff returned home from the hospital, and at the latest after he visited his doctor on May 15, 2010, plaintiff suspected or should have suspected CVS had committed wrongdoing by misfilling his prescription, causing his overdose. (*Fox, supra,* 35 Cal.4th at p. 807.)

In addition, there is evidence plaintiff began investigating the cause of his overdose as soon as he returned home from the hospital. Immediately upon returning home, he checked the Doxepin bottle and noticed he was given 100 mg of Doxepin, instead of the usual 10 mg. Also, plaintiff visited his doctor and told him CVS had given him Doxepin 100 mg, instead of Doxepin 10 mg. In addition, in April 2010, plaintiff visited an attorney for the purpose of determining whether he had a valid claim against CVS. Plaintiff stated in his declaration and in deposition testimony that in April 2010, he discussed with attorney Alvin Gomez CVS's liability and whether plaintiff had a case against CVS.

Despite these facts, plaintiff argues he raised triable issues of fact by presenting evidence he was unaware CVS had erred in filling his prescription until he received CVS's May 7, 2010 letter. Such evidence includes his deposition testimony and declaration in which plaintiff stated he thought his medication may have been generic and therefore required a greater dosage than what he normally received. He was also concerned about his employer finding out about the overdose incident and suspecting he was suicidal. But even if plaintiff wanted to avoid disclosing the incident to his employer and was uncertain as to CVS's wrongdoing, plaintiff was on sufficient inquiry notice to trigger the statute of limitations.

11

Plaintiff was charged with presumptive knowledge of an injury prior to May 7, 2010, because he, not only had information of circumstances putting him on inquiry, but also had the opportunity to obtain knowledge from sources open to his investigation. (*Fox, supra,* 35 Cal.4th at pp. 807-808.)  Under such circumstances, plaintiff was charged with knowledge of the information that would have been revealed by conducting a reasonable investigation.  (*Ibid.*; *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 360-361.)  It is highly likely, that had plaintiff called CVS and inquired regarding his prescription or returned CVS's multiple calls prior to May 7, 2010, plaintiff would have confirmed that CVS had misfilled his prescription and the error caused his overdose, hospitalization, and injuries.

Furthermore, had plaintiff inquired regarding generic medication, he would have discovered that, even if his medication was a generic brand, the dosage should not have been higher than what his doctor had prescribed.  Plaintiff easily could have asked his doctor about generic medication when plaintiff called Dr. Schwartz on March 12, 2010, and visited him on March 15, 2010.  Plaintiff is therefore charged with knowing that, regardless of whether his medication was filled with a generic brand, CVS misfilled his prescription, which caused his overdose.

Even though plaintiff's attorney may have told plaintiff he could not file a case against CVS for medical malpractice without an admission of fault by CVS or a declaration by an expert medical witness stating that CVS had committed malpractice, the statute of limitations had already begun running because plaintiff was on notice of his injury and its negligent cause.  Plaintiff therefore had a duty to investigate, and did so.

12

Plaintiff stated in his deposition and declaration that he "consulted an attorney precisely because [he] wished to explore [his] legal remedies." (*Guitierrez v. Mofid* (1985) 39 Cal.3d 892, 897.) The limitation period was not delayed, suspended, or tolled merely because plaintiff's attorney told him he did not have sufficient evidence to file a claim. (*Id.* at p. 898.)

Even when liberally construing plaintiff's opposition to summary judgment, we conclude plaintiff has not raised a triable issue as to the statute of limitations. As a matter of law, based on the unrefuted evidence, plaintiff was on inquiry notice and thus the statute of limitations began running at the earliest on March 12, 2010, and at the latest by April 20, 2010. As a consequence the one-year statute of limitations expired before plaintiff filed his complaint for malpractice on May 7, 2011.

V

FRAUD CAUSE OF ACTION

Plaintiff contends the trial court erred in granting summary judgment as to his fraud cause of action on the ground it was not a valid cause of action. The trial court concluded the fraud cause of action was merely a recasting of the malpractice cause of action and therefore was barred by the one-year malpractice statute of limitations.

A. *Statute of Limitations Bar*

Plaintiff alleged in his fraud cause of action that on March 11, 2010, CVS represented to plaintiff that it would fill plaintiff's prescription in accordance with the prescription provided by plaintiff's doctor. CVS also represented to plaintiff that the medication provided to plaintiff was what had been prescribed and that CVS has a

process to ensure that the prescriptions are filled exactly as prescribed. Plaintiff's prescription was not filled as prescribed. Instead, CVS gave plaintiff pills that were 10 times the prescribed dosage. In addition, CVS allegedly did not have safeguards in place to prevent the dissemination of the incorrect and deadly prescription to plaintiff. Plaintiff further alleged CVS's representations were thus false and CVS did not disclose to plaintiff CVS's error in filling plaintiff's prescription or that the medication would be deadly if taken as prescribed. Plaintiff took the medication, suffered loss of consciousness, and almost died.

Plaintiff argues that the one-year statute of limitations does not apply to his fraud cause of action because the fraud cause of action is a distinct, properly pled theory of recovery, which was alleged separately from his malpractice cause of action. Plaintiff asserts that his fraud claim is not founded on the rendering of professional services but, rather, is founded on marketing that induced customers to believe CVS's quality control would prevent mistakes in filling customers' prescriptions. In addition, plaintiff argues that he presented evidence raising triable issues concerning his allegations of intentional misrepresentations as to the accuracy of prescriptions filled by CVS.

The medical malpractice statute of limitations set forth in section 340.5 applies to "an action for injury or death against a health care provider based upon such person's alleged professional negligence." (§ 340.5.) The statute of limitations for medical malpractice is "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (§ 340.5.) Plaintiff argues the three-year statute of limitations (§ 338, subd.

14

(d)) generally applicable to fraud causes of action applies to his fraud cause of action, not the section 340.5, one-year statute of limitations.

"'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action.' [Citation.] The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412; *accord*, *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153.) The one-year limitation period may apply to a medical malpractice action, even when the action includes a fraud claim. (*Tell v. Taylor* (1961) 191 Cal.App.2d 266, 271 (*Tell*); *Weinstock v. Eissler* (1964) 224 Cal.App.2d 212, 227.) In *Weinstock*, the court held the one-year, malpractice limitation period applied even though the plaintiff alleged a cause of action for deceit based on the physician's false representations and fraudulent concealment of the nature and extent of injury. The false representation and concealment claim was treated as a medical malpractice claim for purposes of applying the statute of limitations. (*Ibid.*)

Likewise, in *Tell, supra,* 191 Cal.App.2d 266, also a medical malpractice action, the court rejected the plaintiff's attempt to rely on the three-year limitation for fraud when alleging a claim for deceit founded on misrepresentation of the plaintiff's injury. The *Tell* court explained: "As to her second cause of action for deceit, the appellant argues that the trial court erred as the statute of limitations for fraud is three years under subsection 4 of section 338 of the Code of Civil Procedure. However, appellant has cited

15

no authority in this state or elsewhere to indicate that it is possible to extend the statute of limitations in a personal injury action by bringing it on a theory of fraud.  Rather, even though the plaintiff alleges false representations on the part of the physician or fraudulent concealment, our courts have always treated the action as one for malpractice [citation]." (*Id.* at p. 271.)

Relying on *Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1514 (*Smith*), plaintiff argues that he properly alleged fraud as an independent cause of action, separate from his malpractice cause of action.  In *Smith*, the court stated that "additional causes of action frequently arise out of the same facts as a medical malpractice cause of action.  These may include . . . fraud. . ." (*Ibid.*)

Plaintiff's reliance on *Smith* is misplaced.  *Smith* is distinguishable because it concerned the issue of whether the MICRA[2] statute of limitations, section 364, applied to the plaintiff's claim under the Elder Abuse Act.[3]  In concluding the MICRA statute of limitations did not apply because the claim was not based on professional negligence, we noted:  "[I]n dealing with the statute of limitations, what is controlling is not the *nature* of the cause of action (in the sense of the legal theory), but the *gravamen* of the cause of action.  [Citation.]  One cause of action—e.g., negligent misrepresentation—may be governed by different statutes of limitations, whenever the gravamen of the cause of action is different—e.g., professional negligence rather than fraud.  [Citation.]" (*Smith,*

---

[2] Medical Injury Compensation Reform Act, enacted in 1975.

[3] Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.).

*supra,* 133 Cal.App.4th at p. 1525.) In the instant case, the gravamen of the malpractice and fraud causes of action does not differ. Both causes of action are founded on malpractice arising from CVS misfilling plaintiff's prescription, causing him to overdose on Doxepin.

Plaintiff attempts to circumvent the one-year statute of limitations by alleging that CVS fraudulently misrepresented that CVS would properly fill plaintiff's prescription and CVS had procedures to prevent filling prescriptions incorrectly. Despite allegations recasting plaintiff's malpractice claim as fraud, the one-year statute of limitations applicable to malpractice nevertheless applies. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1201-1202.) Since plaintiff failed to file his complaint within one year of discovery of his claim, plaintiff's fraud cause of action is barred by the one-year statute of limitations under section 340.5 as a matter of law.

B. *Fraud Cause of Action Unsupported by Evidence*

Because we conclude the trial court did not err in ruling plaintiff's fraud cause of action is barred by the statute of limitations, we need not consider plaintiff's contention that evidence supports his fraud cause of action. Nevertheless, we will briefly address the issue on the merits.

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.) Plaintiff did not establish in his opposition to CVS's summary judgment motion that he can prove each of these

17

elements. He did not provide any evidence he reasonably relied on any false representations made by CVS to plaintiff regarding his medication or quality control; that CVS made the alleged representations recklessly or knowing they were false; that CVS intended to induce plaintiff to rely on the representations; or that such reliance resulted in plaintiff's injuries.

Plaintiff testified at his deposition that he had been filling his Doxepin 10 mg prescription at CVS since 2009, and had done so on March 11, 2010, just as he had done in the past. Plaintiff said he did not recall speaking to a pharmacist or anyone else at CVS regarding his medication when he picked up his prescription that day. He merely went to CVS to refill his prescription, as he had done many times before, and CVS mistakenly refilled the prescription with Doxepin 100 mg, instead of Doxepin 10 mg. The bottle of pills he received on March 11, 2010, accurately stated the pills were 100 mg and there is no evidence that plaintiff relied on any other representations by CVS that induced him to take the pills. There is no evidence he was told CVS correctly refilled his prescription or was told that CVS had a process to ensure his prescriptions were filled exactly as prescribed, and these representations induced him to take the Doxepin 100 mg pills on March 11, 2010.

Since plaintiff has failed to present any evidence establishing that he can prevail on his fraud claim, the trial court appropriately granted summary judgment on the fraud cause of action.

18

VI

DISPOSITION

The judgment is affirmed.  Defendant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:


<u>HOLLENHORST</u>
Acting P. J.


<u>KING</u>
J.