Filed 6/19/15  Butler v. Paraguya et al. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL E. BUTLER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LAUREEN PARAGUYA ET AL.,<br><br>        Defendants and Respondents. | A138792<br><br>(San Francisco County<br>Super. Ct. No. 512116) |

Plaintiff Michael Butler appeals judgments of dismissal entered after the trial court sustained defendants'[1] demurrers without leave to amend on the ground that his claims are barred by the one-year statute of limitations for medical malpractice.  (Code Civ. Proc.,[2] § 340.5.)  He contends his action was based on fraud, not medical malpractice, and accordingly the court should have applied the three-year limitations period for fraud.  (§ 338, subd. (d).)  We agree that plaintiff's action is barred by the statute of limitations for medical malpractice, and accordingly we shall affirm the judgment.

---

[1] The named defendants are Allan Pont, M.D., St. Luke's Hospital (St. Luke's), Sutter Health West Bay Hospitals, and California Pacific Medical Center (collectively, the Hospital Defendants) and Laureen Paraguya, M.D.  According to the operative complaint, California Pacific Medical Center took over St. Luke's from its affiliate Sutter Health in 2007.

[2] All undesignated statutory references are to the California Code of Civil Procedure.

1

# I. BACKGROUND

## A. The Original Complaint

Plaintiff filed this action[3] against Dr. Laureen Paraguya and 50 Doe defendants on June 29, 2011, alleging causes of action for medical malpractice, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress. According to the complaint, plaintiff was hospitalized with kidney failure at St. Luke's in May 2007. While he was there, Dr. Paraguya told him he was not in immediate danger from uremia and therefore did not need to begin dialysis for a number of weeks, which would allow time for plaintiff to establish himself with a doctor at San Francisco General Hospital as an outpatient and receive treatment there. Dr. Paraguya told plaintiff falsely that she had consulted with a nephrologist who had treated him in the past, Dr. Iliya. Dr. Paraguya told plaintiff that Dr. Iliya had seen his test results and did not need to see him unless he was ready to consent to dialysis. However, these statements were false: Dr. Iliya later told plaintiff that he did not consult with Dr. Paraguya about the case in May 2007, that he was not aware of plaintiff's hospitalization, and that he would have seen plaintiff if Dr. Paraguya had made a referral. Dr. Paraguya wrote in plaintiff's chart that he refused to consider dialysis; in fact, according to the complaint, he had agreed to dialysis if he were in danger from uremia. Plaintiff further alleged that two days after he was discharged from St. Luke's, he "collapsed" and was admitted to another hospital, where a team of nephrologists urged him to begin emergency dialysis. The following day, he was diagnosed with a potentially fatal heart condition that was a complication of uremia. In his cause of action for fraud, plaintiff alleged that after he received his medical records from St. Luke's in March 2008, he realized Dr. Paraguya had lied to him and manipulated his chart.

## B. First Through Fourth Amended Complaints

Plaintiff filed a first amended complaint on September 15, 2011, alleging a single cause of action for fraud against Dr. Paraguya based on her allegedly false representations

---

[3] Plaintiff acted in propria persona throughout these proceedings.

that Dr. Iliya knew of his admission, had seen his test results, and had advised her. Dr. Paraguya demurred to the first amended complaint on the grounds that the fraud cause of action was time-barred by the three-year limitations period of section 338, subdivision (d), and that the cause of action for fraud was uncertain because it sought to "twist a garden variety medical negligence case" into one for fraud. On October 27, 2011, the court sustained the demurrer as to the statute of limitations issue with leave to amend.

Butler filed a second amended complaint, in which he detailed the reason he mistakenly identified March 2008 as the date of discovery of the fraud in his initial complaint. Butler explained that he first ordered his medical records in February 2008. When he received them in March 2008, he believed he had received incomplete records because they did not include any notes from a nephrologist and he mistakenly believed that the records contained the notes of a nurse, rather than Dr. Paraguya. He looked at the records only briefly at that time. Butler alleged he again ordered his records in June 2008, and received them in August 2008. He then realized that the allegedly inaccurate progress notes had been made by Dr. Paraguya. He believed he was investigating a malpractice claim against Dr. Iliya as well as Dr. Paraguya, and thought the records were missing the nephrology notes. He again requested the records, and received them in November 2008. When he saw nothing from the nephrologist, he began to suspect Dr. Paraguya had committed fraud.

Dr. Paraguya demurred to the second amended complaint on the ground that it was barred by the three-year statute of limitations for fraud. The trial court overruled the demurrer on the ground that Butler's explanation for the change of the date of discovery of fraud was sufficient to prevent him from being bound by his prior allegation that he discovered the fraud in March 2008.

On June 12, 2012, plaintiff filed his third amended complaint, which named the Hospital Defendants and asserted causes of action for fraud and negligent infliction of emotional distress. Dr. Paraguya demurred to the third amended complaint on the grounds that plaintiff failed to state facts sufficient to constitute causes of action for fraud

3

and negligent infliction of emotional distress, and the trial court overruled the demurrer. The Hospital Defendants also demurred to the third amended complaint, on the ground that it was time-barred by the section 340.5, which sets forth the statute of limitations for actions against health care providers for professional negligence. The trial court sustained the Hospital Defendants' demurrer with leave to amend. In doing so, the court stated that plaintiff could also attempt to allege a cause of action for "patient dumping" under the Emergency Medical Treatment and Active Labor Act (EMTALA) (42 U.S.C. § 1395dd) if he could do so in good faith.

Plaintiff then filed a fourth amended complaint, asserting a single cause of action for fraud. The trial court sustained the demurrers of Dr. Paraguya and the Hospital Defendants with leave to amend, ruling the claims were barred by the statute of limitations found in section 340.5.

## C. Fifth Amended Complaint

We now reach the operative complaint in this action. Plaintiff filed a fifth amended complaint alleging a single cause of action for fraud against all defendants. As the basis for his claim, he alleged the following: He was hospitalized at St. Luke's in May 2007 and received medical treatment there. His primary physician, Dr. Paraguya, informed him falsely that Dr. Iliya knew of his admission, had seen his test results, and was advising Dr. Paraguya. Plaintiff relied on this false information, which led him to believe he had been screened and assessed properly before being approved for discharge. Dr. Paraguya did not allow plaintiff to ask the nephrologist any questions about his condition, thus concealing from him the immediate danger of uremia.

Plaintiff alleged he filed a grievance while he was still a patient in May 2007 on the grounds that he was being discharged too soon, that he had not been seen by a nephrologist, and that without a nephrology evaluation, he did not know whether he should undergo dialysis. St. Luke's director of nursing dismissed the grievance without investigation. Plaintiff filed a second grievance in July 2009, complaining that Dr. Paraguya treated him without a nephrologist and lied in his chart. When he did not receive a reply from the hospital, he reported the grievance to the California Department

4

of Public Health (DPH) in October 2009. Four months later, in February 2010, DPH received a letter from defendant Dr. Pont, California Pacific Medical Center's Vice President of Medical Staff Affairs, dated August 2009, indicating the hospital had investigated his grievance and found it lacked merit. The letter noted that Dr. Iliya had said he would have been happy to see plaintiff if he had agreed to dialysis. Plaintiff alleged he did not receive a copy of the letter until the middle of April 2010, that the letter was a fabrication, and that the letter was the last overt act of a conspiracy among the defendants to deceive him and DPH.

Plaintiff alleged that, in early May 2010, DPH sent plaintiff a letter indicating it had investigated his grievance and found his claims unsubstantiated. The letter stated, "The discharge summary dated May 4, 2007 indicated the nephrologist was aware of admission and could not help the patient until he wanted dialysis. [¶] This complaint was directed to the medical director who spoke directly to the attending physician and the nephrologist. The nephrologist confirmed they were in communication about the case and that the nephrologist only needed to see the patient if the patient was ready to start dialysis." Plaintiff alleged that, in May 2010, plaintiff spoke with Dr. Iliya, who told him he had not performed the emergency screening during his May 2007 hospital stay and that no one had spoken with him about plaintiff since he last treated him in February 2007, three months before the hospital stay.

Plaintiff also alleged he was given false information about where he could obtain the medications he needed upon his discharge in May 2007.

Both Dr. Paraguya and the Hospital Defendants filed demurrers to the fifth amended complaint, alleging, inter alia, that it was barred by the statute of limitations. (§ 340.5.) The trial court ruled that plaintiff's action was time-barred by section 340.5, the statute of limitations for medical malpractice. The court sustained the demurrers without leave to amend. Plaintiff has appealed the ensuing judgments.

5

## II. DISCUSSION

Butler contends the fifth amended complaint alleges fraud as an intentional tort and that his claim is therefore not barred by the statute of limitations for professional negligence.

### A. Standard of Review

In reviewing the sufficiency of a complaint against a demurrer, "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) " ' "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; and see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [" 'Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]' [Citation.]"].)

### B. Section 340.5 Bars this Action

Section 340.5 provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following:

6

(1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

The first question we face is whether the applicable statute of limitations is found in section 340.5 or whether we should apply the three-year limitations period for fraud found in section 338, subdivision (d), which applies to "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Plaintiff contends the fifth amended complaint states a cause of action for an intentional tort, fraud, and accordingly is subject to the limitations period of section 338, subdivision (d). Defendants, on the other hand, contend the trial court properly applied the statute of limitations for medical malpractice.

Section 340.5 is part of Medical Injury Compensation Reform Act (MICRA), which was designed to " ' "reduce the cost and increase the efficiency of medical malpractice litigation by revising a number of legal rules applicable to such litigation." ' " (*Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1514.) "The problem is that additional causes of action frequently arise out of the same facts as a medical malpractice cause of action. These may include battery, products liability, premises liability, fraud, breach of contract, and intentional or negligent infliction of emotional distress. Indeed, a plaintiff hoping to evade the restrictions of MICRA may choose to assert *only* seemingly non-MICRA causes of action. Thus, when a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA. [¶] The answer is sometimes yes and sometimes no, depending on the particular cause of action and the particular MICRA provision at issue. [Citations.]" (*Ibid.*)

Two cases are particularly relevant to our analysis of this question. The plaintiff in *Tell v. Taylor* (1961) 191 Cal.App.2d 266, 267–268 (*Tell*), asserted causes of action for malpractice and deceit against an osteopathic physician. The plaintiff had fallen and

7

injured her hip.  The defendant assured the plaintiff she would sustain no permanent injury.  After X-rays revealed a fracture, the defendant told her the bone would heal in the course of time and she should be patient and wait.  (*Id*. at pp. 268–269.)  Division Two of the First Appellate District concluded both causes of action were barred by the one-year statute of limitations for medical malpractice.  Responding to the plaintiff's contention that the cause of action for deceit was subject to the three-year limitations period for fraud, the court stated, "[A]ppellant has cited no authority in this state or elsewhere to indicate that it is possible to extend the statute of limitations in a personal injury action by bringing it on a theory of fraud.  Rather, even though the plaintiff alleges false representations on the part of the physician or fraudulent concealment, our courts have always treated the action as one for malpractice [citations]."  (*Id*. at p. 271.)

Division One of the First Appellate District followed *Tell* in deciding *Weinstock v. Eissler* (1964) 224 Cal.App.2d 212 (*Weinstock*).  The plaintiff there brought an action against his treating physicians and a hospital.  (*Id.* at p. 217.)  The plaintiff alleged he had consented to a cerebral angiogram, but not to a spinal tap.  (*Id*. at p. 219.)  Nevertheless, his doctors performed a spinal tap at the same time as the angiogram, causing the plaintiff to suffer injuries.  (*Id*. at pp. 217–219.)  In order to conceal the fact that the spinal tap was performed and the negligence with which the procedures were performed, the doctors did not disclose the spinal tap to the plaintiff and failed to enter any facts about the procedures into the medical records.  (*Id*. at p. 217.)  The doctors assured the plaintiff that his condition would substantially improve over a period of time.  (*Id*. at p. 218.)  The plaintiff did not learn about the spinal tap until he took the deposition of an anesthesiologist.  (*Id*. at pp. 217–218.)  He asserted causes of action for malpractice, battery, and deceit.  (*Id*. at pp. 217–220.)  In considering whether the action was barred by the statute of limitations, the court stated, "The one-year statute of limitations [for malpractice] is applicable even where, as here, the plaintiff-patient alleges a cause of action for deceit based on the physician's false representations or fraudulent concealment of the nature and extent of the injury.  Such a cause of action has always been treated as

one for malpractice. [Citations.]" (*Id.* at p. 227, citing *Tell* and *Garlock v. Cole* (1962) 199 Cal.App.2d 11, 15.)

The court later considered whether the allegations of the deceit cause of action, which were added in an amended complaint, related back to the filing of the original complaint. The court answered that question in the affirmative, stating, "The factual nucleus of each count was the commission of the tortious act, negligent or intentional. [¶] . . . The defendant's act for which plaintiff seeks recovery is the same—the performance of the cerebral angiogram and spinal tap. The primary right for the violation of which he seeks recovery is the same—the wrongful invasion of his body although its statement now appears in terms of fraud. Nevertheless, realistically examined, the allegations relating to defendant's false representations and plaintiff's reliance thereon are prefatory to the central allegations of the count, namely defendant's performance of the operation and plaintiff's resulting injuries. All three counts against defendant Cross involve the same wrong, the invasion of plaintiff's body by certain acts: count one states that such acts were negligently performed; count two states that they were performed without plaintiff's consent; count three states that they were performed under false representations that they were routine, harmless and necessary." (*Weinstock*, *supra*, 224 Cal.App.2d at pp. 234–235.)

Here, as in *Weinstock*, the factual nucleus of the fraud claim is indistinguishable from a claim for malpractice. The gravamen of Butler's complaint is that Dr. Paraguya failed to consult a nephrologist before discharging him, that she lied in order to cover up her professional failure, and that he suffered injuries through being discharged without proper treatment. Thus, in effect, plaintiff contends that because of Dr. Paraguya's tortious actions, he did not receive adequate medical care and suffered resulting harm. As a result, we conclude the statute of limitations for medical malpractice applies to the fraud cause of action.

We are not persuaded otherwise by the authorities plaintiff cites. The district court in *Romar v. Fresno Cmty. Hosp. & Med. Ctr.* (E.D. Cal. 2008) 583 F.Supp.2d 1179, 1182, 1187 (*Romar*), held that a disparate treatment claim under EMTALA (42 U.S.C.

9

§ 1395dd) was not subject to MICRA's noneconomic damages limitation (Civ. Code, § 3333.2). The district court concluded that a disparate screening claim is based not on violation of the professional standard of care but on the failure to apply the same screening standards to each patient. However, plaintiff does not purport to state a cause of action under EMTALA, and nothing in *Romar* calls into question the well-established rule of *Tell* and *Weinstock*.

Plaintiff also draws our attention to *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 668–669 (*Perry*), which held that the noneconomic damages limitation of Civil Code section 3333.2 did not apply to a battery claim that was based on a doctor's action in performing a breast augmentation to which the patient had not consented, because the cause of action was not based on professional negligence as defined by MICRA. There is no contention here that defendants engaged in battery on plaintiff.

A more nuanced question is presented by *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623 (*Nelson*). The plaintiff there sought breast implants from the defendant. He told her implants would not be satisfactory but that he had an alternate procedure that would be simple and free of side effects, involving the injection of an "inert substance" that she later learned was silicone. (*Id*. at p. 629.) The defendant had been arrested a few months previously for using silicone, which was considered dangerous for use in human body tissue, and was told that using it without a permit was against the law. (*Id*. at pp. 629–630.) The plaintiff later had a double mastectomy after masses were found in her breasts. (*Id*. at p. 631.) She brought an action against the doctor alleging malpractice, battery, and fraud, and the trial court ruled the malpractice claim was barred by the one-year statute of limitations. (*Id*. at pp. 631–632.) Relying on *Tell* and *Weinstock*, the defendant contended all the causes of action were for injuries as a result of medical treatment and were therefore barred by the statute of limitations for medical malpractice. (*Id*. at p. 632.)

The appellate court in *Nelson* rejected this argument and concluded the statute of limitations for fraud could properly be applied. The court first noted that in *Tell* and *Weinstock*, the plaintiffs sought treatment for an injury or illness, and that the defendant

in *Nelson* was well and seeking an elective procedure.  (*Nelson*, *supra*, 125 Cal.App.3d at pp. 632–633.)  The court went on to reason that the evidence showed the doctor knew his use of silicone was illegal, but that he nevertheless injected the patient without telling her the name of the substance, that it could be used only under certain circumstances, that its use required state or federal approval, and that he did not have a permit.  (*Id*. at p. 635.)  The evidence indicated the procedure to which the plaintiff consented was substantially different from that which the doctor performed and that it was sufficiently different to amount to a battery.  (*Ibid*.)  The court held that in the circumstances, the patient could maintain a cause of action for fraud, to which the longer limitations period for fraud applied.  (*Id*. at p. 636.)  *Nelson*, then, like *Perry*, is at base a case of battery.  Not so here.  Plaintiff does not contend defendants lied to him about the nature of the treatment he was receiving and as a result performed procedures on him to which he did not consent.

*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, is likewise factually distinguishable.  After receiving fertility treatments at a clinic, the plaintiffs brought an action alleging the defendants had stolen their human genetic material and had sold some for research and implanted some pre-embryos into different women without the plaintiffs' consent.  (*Id*. at pp. 349–350.)  The Court of Appeal concluded the causes of action for fraud, conversion, and intentional infliction of emotional distress were not subject to the limitations period of section 340.5, reasoning, "None of the patients assert the egg harvesting medical procedures fell below the standard of care.  Rather it is the intentional and malicious quest to steal genetic material that is the focus of the lawsuit."  (*Id*. at pp. 355–356.)  Here, although plaintiff has couched his allegations in terms of intentional fraud, the focus of his lawsuit is that he suffered a collapse and had to undergo emergency medical procedures because he was discharged without having received a proper assessment by a nephrologist.

Finally, *So v. Shin* (2013) 212 Cal.App.4th 652, does not assist plaintiff.  There, a patient underwent a dilation and curettage procedure following a miscarriage, received inadequate anesthesia, and awoke during the procedure, experiencing pain and discomfort.  Afterward, she asked the anesthesiologist why she had awakened; the doctor

became upset and showed her a container of blood and other materials, and later grabbed her hand and asked her to keep quiet about the incident. (*Id*. at pp. 657–658.) The appellate court concluded the statute of limitations for medical malpractice did not apply to the plaintiff's claims against the anesthesiologist because the wrongful actions were undertaken for the purpose of persuading the plaintiff not to report her to the hospital, not for the purpose of delivering care to the plaintiff. (*Id*. at p. 667.) No such facts exist here.

Plaintiff argues, however, that because Dr. Paraguya was not a nephrologist, she was acting outside the scope of her license and therefore her actions did not constitute professional negligence. For this, he relies on Civil Code section 3333.2, which limits noneconomic damages for professional negligence by a health care provider, "provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Civ. Code, § 3333.2, subd. (c)(2); and see § 340.5.) Plaintiff provides no authority for the proposition that the services Dr. Paraguya provided were outside the scope of her license.

We agree with the trial court, accordingly, that the applicable statute of limitations is that found in section 340.5. Thus, plaintiff was required to bring his action within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." The three-year period may be tolled for proof of fraud or intentional concealment, but in any case, the one-year period begins to run when the plaintiff discovers or should have discovered the injury. (§ 340.5; *Graham v. Hansen* (1982) 128 Cal.App.3d 965, 974–975.)

The fifth amended complaint shows on its face that plaintiff filed a grievance against Dr. Paraguya on May 4, 2007, while he was still a patient at the hospital, complaining he was being discharged too soon, that Dr. Paraguya had refused to refer him to the nephrologist, and that without a nephrology evaluation he could not be sure whether to undergo dialysis. Two days later, he collapsed and required emergency

12

dialysis. Thus, the complaint shows on its face that plaintiff knew or was on notice of facts showing he had suffered an injury due to Dr. Paraguya's wrongdoing in May 2007. He did not file this action until June 29, 2011, more than four years later. Plaintiff contends, however, that he did not become aware of the fraud until August 2008, when he reviewed his medical records and learned that the nephrologist had not consulted with Dr. Paraguya. Even assuming the statute of limitations began to run only after he discovered the alleged misstatements in his records in 2008, the one-year limitations period would have expired in 2009, well before plaintiff brought this action.

## C. Conspiracy

In an effort to avoid this conclusion, plaintiff contends that defendants engaged in a conspiracy to conceal the fraud and that the last overt act of the conspiracy did not take place until 2010, when he received a copy of the allegedly fabricated letter prepared by Dr. Pont on behalf of the grievance committee. The conspiracy, he alleges, was to commit fraud in order to hide the fact that Dr. Iliya did not perform an emergency screening exam in violation of EMTALA, which prohibits "patient dumping."

We reject this contention. Plaintiff acknowledges in his fifth amended complaint that he is not asserting a cause of action for violation of EMTALA, although the trial court had earlier given him the opportunity to attempt to do so. This is presumably because any such action would be barred by the statute of limitations, under which an action for damages for violation of EMTALA must be brought within two years of the violation. (42 U.S.C. § 1395dd(d)(2)(C).) However, to the extent the alleged conspiracy was designed to conceal an EMTALA violation, plaintiff's claim seems to be nothing more than a backdoor way of reviving an expired cause of action. We fail to see how an action for concealing an EMTALA violation may go forward after the statutory time for seeking recovery for the same violation has already passed.

In any case, we would reject plaintiff's contention that his conspiracy allegations save his cause of action for fraud. " 'Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its

13

perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.' " (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1141, fn. omitted.) Thus, " '[a] civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage. [Citations.]' [Citation.] 'The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.' " (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44.)

It is true, as plaintiff points out, that where a conspiracy exists, the statute of limitations does not begin to run until the "last overt act" pursuant to the conspiracy has been completed. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786 [last overt act was collection of final payment on fraudulent loan].) However, it is also true that one cannot conspire after the fact to commit a completed tort. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1592–1596.)

Here, the tort plaintiff alleges defendants committed was fraud, the elements of which are misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage. (Civ. Code, § 1709; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 481.) Reading the fifth amended complaint in the most favorable light, there is no allegation that plaintiff relied on any misrepresentation by any of the defendants after the events of June 2007. At that point, any cause of action for fraud was complete, and plaintiff suffered no damage through justifiable reliance on any further false statements. (See *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151 ["Justifiable reliance is an essential element of any cause of action for fraud and conspiracy to commit fraud"].) In the circumstances, we conclude that defendant has not alleged overt acts in furtherance of an actionable conspiracy that fell within the limitations period.

Accordingly, we agree that the trial court properly sustained defendants' demurrers.  Moreover, plaintiff has made no effort to show how he could amend his complaint so as to cure its defects, and we therefore have no ground to conclude the trial court abused its discretion in denying leave to amend.  (See *Goodman v. Kennedy*, *supra*, 18 Cal.3d at p. 349.)[4]

## III.  DISPOSITION

The judgments are affirmed.


_____
Rivera, J.


We concur:


_____
Reardon, Acting P.J.


_____
Streeter, J.

---

[4] We also reject plaintiff's contention that by asserting a "bogus legal theory," defendants have committed fraud on the court.